# EXHIBIT 1

15/59

# LOAN AGREEMENT

Dated November 7, 2003,
Reinstated January 19th, 2012

between

## KfW

Palmengartenstr. 5-9, D-60325 Frankfurt/Main, Germany
(hereinafter called **"KfW"**)
as Lender

and

## Explorer Maritime Cruises LLC

132 East 70th Street New York, N.Y. 10021, USA
(hereinafter called **"Explorer"**)
as Borrower

for USD 10,000,000

[Loan No.: 8805]

16/59

**Table of Contents**

1.  Definitions and Interpretation ................................................................................... 1
2.  Loan Agreement and General Terms ...................................................................... 5
3.  Loan ...................................................................................................................... 6
4.  Disbursement ........................................................................................................ 6
5.  Fees ...................................................................................................................... 6
6.  Interest .................................................................................................................. 7
7.  Repayment and Early Repayment .......................................................................... 8
8.  Calculations and Payments in General ................................................................ 10
9.  Taxes, Duties and Costs ...................................................................................... 11
10. Security ............................................................................................................... 14
11. Representations and Warranties by the Borrower ................................................ 15
12. Financial Ratios ................................................................................................... 16
13. Undertakings of the Borrower .............................................................................. 17
14. Information Covenants ......................................................................................... 19
15. Termination .......................................................................................................... 20
16. Transfer of Rights and Obligations ...................................................................... 23
17. General Provisions ............................................................................................... 23
18. Notices and Communications ............................................................................... 24
19. Applicable Law and Jurisdiction .......................................................................... 25
20. German VAT regulations ...................................................................................... 26
21. Entire Agreement ................................................................................................ 26

Annexes:

| | |
|---|---|
| Annex 1 | Drawdown Notice |
| Annex 2 | Conditions Precedent |
| Annex 3 | N/A |
| Annex 4 | Periodic Reports |
| Annex 5 | Compliance Certificate |
| Annex 6 | General Terms |



*17/59*

1

**Preamble**

(A)   By a loan agreement dated 07th of November, 2003, KfW has financed the acquisition of the vessel "MS Orion" by the Borrower. For various structural reasons, the Borrower offered to exchange the original mortgaged vessel "MS Orion" for the vessel "MS Yorktown." Due to time lag between mortgaging the vessels the loan was prepaid in 2010. It was agreed that KfW would revalue this loan to the Borrower, such loan to be secured by a different vessel, the "MS Yorktown."

(B)   On that basis, KfW has agreed to grant to the Borrower a term loan in an amount of up to USD 10,000,000. Such term loan will be secured by a first degree mortgage over the Vessel (as defined below), which is owned by the Borrower.

(C)   NOW THEREFORE, the parties agree as follows:

**1.    Definitions and Interpretation**

1.1   *Definitions.* Subject to any express provision to the contrary in this Agreement or in its Annexes or unless the context requires otherwise, in this Agreement and its Annexes the following terms have the following meaning:

**Acceptable Bank** means:

(a)   a bank or financial institution which has a rating for its long-term unsecured and non credit-enhanced debt obligations of BBB+ or higher by Standard & Poor's Rating Services or Fitch Ratings Ltd or Baa2 or higher by Moody's Investor Services Limited or a comparable rating from an internationally recognised credit rating agency and approved by KfW, or

(b)   any other bank or financial institution approved by KfW.

**Annual Financial Statements**: has the meaning given to that term in Annex 4.

**Banking Day**: a day (other than a Saturday or Sunday), on which commercial banks are open for general business in Frankfurt am Main and London.

**Borrower**: Explorer Maritime Cruises LLC, 132 East 70th Street New York, N.Y. 10021, USA.

**Business Plan:** has the meaning given to that term in Annex 4.

**Cash** means, at any time, cash denominated in US-Dollars in hand or at bank and (in the latter case) credited to an account in the name of the Borrower with an Acceptable Bank and to which the Borrower is alone beneficially entitled and for so long as:

(c)   that cash is repayable on demand;

(d)   repayment of that cash is not contingent on the prior discharge of any other indebtedness of the Borrower or of any other person whatsoever or on the satisfaction of any other condition;

(e)   there is no security over that cash except for Transaction Security or any security to the benefit of the account bank in accordance with its general terms; and

(f)   the cash is freely and immediately available to be applied in repayment or prepayment of the Facilities.

**Change of Control:** means any event following which George Papagapitos and Vasos Papagapitos or any funds controlled by George Papagapitos and Vasos Papagapitos cease to control directly or indirectly the Borrower.

**Compliance Certificate:** the certificate to be issued by the Borrower pursuant to Clause 12.4, substantially in the form of Annex 5.

**Disbursement Date:** the date on which the Loan has been disbursed in accordance with the provisions of this Loan Agreement.

**Disposal:** any transfer of a right *in rem* and any transfer of beneficial ownership, to the extent such transfer does not involve an Encumbrance.

**Drawdown Notice:** the duly completed and signed request submitted by the Borrower substantially in the form of Annex 1 to make available any Loan Amount.

**Earnings:** means all hires, freights and other moneys payable to the Borrower in respect of the Vessel including (without limitation) all remuneration for cruises and voyages performed for salvage and towage services, demurrage and detention moneys, contributions in general average and damages for breach of any contract for the operation, employment or use of the Vessel and any possible additional bareboat or time charter.

**Earnings Account:** the account number 9993549874, held with Citibank in New York, N.Y. 10021 it being understood that such account shall be replaced with an account of an Acceptable Bank if Citibank ceases to be an Acceptable Bank.

Loan Agreement Explorer Maritime Cruises LLC



3

**Encumbrance**: any right of use or enforcement or other right *in rem* granted for purposes of securing a claim; an encumbrance is also deemed to include (i) any conditional sale with retention of title in favour of the seller, but excluding retention of title arrangement which are customary in the relevant field of business and which are made in the ordinary course of business, (ii) the transfer of assets for security purposes, (iii) the transfer of assets on terms whereby they are or may be leased to or re-acquired by the transferor and (iv) the sale of receivables on recourse terms regarding the performance by third party debtors (*Bonitätshaftung*).

**Event of Default**: an event of default described under clause 15.1 (*Events of Default*).

**Finance Documents**: this Loan Agreement, any Drawdown Notice, any Compliance Certificate, any Security Document.

**Financial Indebtedness**: financial indebtedness (i) in respect of monies borrowed, (ii) represented by any note, bond, debenture, bill of exchange or other similar instrument, (iii) in respect of lease transactions with the exception of operating leases, (iv) based on any guarantee (*Garantie*), surety (*Bürgschaft*), letter of comfort or other legal act giving rise to a liability on the part of the Borrower for third party liabilities and (v) resulting from similar transactions having the commercial effect of a borrowing.

**Final Maturity Date**: the earlier of (i) 23 quarters after the first repayment date and (ii) September 30, 2018.

**Financial Ratios**: the ratios more specifically defined in clause 12 (*Financial Ratios*).

**Increased Costs**: has the meaning given to that term in clause 9.5 (*Increased Costs*).

**Insurances**: all insurance contracts entered into by the Borrower in relation to the Vessel in accordance with clause VI.2 of the General Terms.

**Interest Payment Date**: the date on which the Borrower's interest payments pursuant to clause 6.2 (*Interest Payment Dates*) are due and payable.

**Interest Period**: a period during which interest at a certain interest rate is payable on a Loan Amount in accordance with Clause 6.3(b), or for which default interest pursuant to clause 8.7 (*Default Interest*) and lump sum compensatory damages pursuant to clause 8.8 (*Lump Sum Damages*) will be charged.

**LIBOR**: for any Interest Period the percentage rate per annum (rounded up, if necessary, to the next 1/16th of one per cent.) quoted on Reuters' page LIBOR01 or, if this page does not have the required details or is not accessible, on Bloomberg page



4

BBAM (or on a successor page which replaces Reuters' page LIBOR01 or Bloomberg page BBAM) at or about 11.00 a.m. London time on the second Banking Day before the beginning of that Interest Period, as the LIBOR rate determined by the British Bankers' Association as its interest for loans in US-Dollars for the same period as that Interest Period or, if none of the periods quoted by Reuters or Bloomberg (or any successor page) are the same as that Interest Period, interpolating, where appropriate, between the yield quotations for the next shorter and next longer maturities.

**Loan**: the Loan granted pursuant to clause 2 (*Loan*).

**Loan Amount**: any amount, which – depending on the context of the relevant provision – shall be paid or has already been paid out of the Loan and is still outstanding (irrespective of whether such amount represents the entire Loan or a part thereof).

**Non-Utilisation Fee**: the excess (if any) of (i) the interest for a Loan Amount, which KfW would have been entitled to claim until the end of the Interest Period had the Borrower not dispensed with the disbursement of the Loan Amount over (ii) the interest which KfW could receive by reinvesting the respective Loan Amount until the end of the Interest Period taking into consideration the repayment of principal as agreed in the Loan Agreement, provided that such excess amount must be discounted by the reinvestment interest rate curve thus determined.

**Periodic Reports**: has the meaning given to that term in Annex 4.

**Potential Event of Default**: an event which would constitute an Event of Default by reason of any notice, the expiration of time, a determination or through the fulfilment of a condition.

**Prepayment Fee**: the excess of (i) the interest for a Loan Amount, which KfW would have been entitled to claim until the end of the Interest Period if the Borrower had not prepaid the Loan Amount over (ii) the interest which KfW would be entitled to receive by reinvesting the respective Loan Amount until the end of the Interest Period taking into consideration the repayment of principal as agreed in the Loan Agreement, provided that such excess amount must be discounted by the reinvestment interest rate curve thus determined.

**Prepayment Penalty**: means the prepayment penalty payable pursuant to clause 7.2(b) (*Prepayment Penalty*).

**Quarterly Report**: has the meaning given to that term in Annex 4.

**Repayment Instalment**: an instalment referred to under clause 7.1 (*Repayment*).

Loan Agreement Explorer Maritime Cruises LLC

**Security**: the security provided for purposes of securing the Borrower's obligations under this Agreement, as set out in more detail in Clause 10.1.

**Security Documents**: the documents for the creation of the Security.

**Vessel**: the cruise vessel named "Yorktown" with IMO no. 8949472, registered in New York, N.Y., United States of America under official no. 928931, flying the flag of America.

1.2 *Construction*. Subject to any express provision to the contrary in this Agreement or unless the context otherwise requires, references to

(a) this Agreement, any other agreement or any other document are references to such agreements or documents as amended, supplemented or replaced from time to time,

(b) natural persons, legal entities, partnerships or unincorporated associations include any natural person who, or legal entities, partnerships or unincorporated associations which, succeed in whole or in part to their rights or obligations by assignment, by assumption of obligations, by operation of law or otherwise, and

(c) when a German term is used in this Agreement it shall prevail over the meaning of the corresponding English term.

1.3 *Headings*. The headings and short descriptions used for the individual sections of this Agreement have no legal significance and do not affect its interpretation.

2. **Loan Agreement and General Terms**

This loan agreement sets out the terms and conditions upon which KfW is prepared to make available to the Borrower a secured long term loan facility. The General Terms and Conditions for Ship Financing (February 2008) as per Annex 6 hereto (**"General Terms"**) shall apply to and form an integral part of this loan agreement as if fully set forth herein, provided that any reference to KfW IPEX-Bank in the General Terms should read as a reference to KfW (this loan agreement and the General Terms hereinafter together being referred to as **"Loan Agreement"**). In case of any discrepancy between the provisions of this loan agreement and the General Terms the provisions of this loan agreement shall prevail.



22/59

6

3.    **Loan**

Subject to the provisions of this Agreement, KfW shall grant to the Borrower a non-revolving Loan not exceeding the lesser of (i) USD  10,000,000 (in words: ten million US-Dollars) and (ii) 50% of the fair market value of the Vessel, which is to be evidenced by a valuation of an independent ship broker acceptable to KfW.

4.    **Disbursement**

4.1    *Only one disbursement.* There shall be only one disbursement under this Loan Agreement.

4.2    *Drawdown Notice.* The Borrower shall have the right to submit to KfW the Drawdown Notice for the disbursement under the Loan provided that all the conditions for disbursement as set forth in Annex 2 have been satisfied.

The Drawdown Notices shall be irrevocable and must have been submitted to KfW no later than by 12 a.m. on the fifth Banking Day prior to the disbursement date referred to in the Drawdown Notice.

4.3    *Availability period.* KfW shall have the right to refuse disbursement of funds with respect to any Drawdown Notices which it receives later than three months after the signing date of this Agreement.

4.4    *Non-utilisation.* If the Borrower waives the disbursement of a Loan Amount for which an interest rate has already been determined, or if such Loan Amount is not disbursed due to any other reasons for which KfW cannot be held responsible, then the Borrower shall upon request promptly pay KfW a Non-Utilisation Fee. KfW shall calculate and notify the Borrower of such Non-Utilisation Fee.

5.    **Fees**

5.1    *Management fee.* The Borrower shall pay KfW a one-time management fee in the amount of USD 200,500 (in words: two hundred thousand five hundred US-Dollars), 50% of which shall become due on the date of signing of this Agreement by KfW and 50% of which shall become due on the date of the Disbursement of the Loan. Once KfW has signed this Agreement, the first tranche of the management fee shall become due and payable in full regardless of whether the Loan is disbursed in full, or at all.

5.2    *Commitment fee.* At the Drawdown Date, the Borrower shall pay KfW a non-refundable commitment fee of 50 basis points p.a. (in words: fifty basis points per

Loan Agreement Explorer Maritime Cruises LLC

23/59

7

annum) on the Loan Amount.  This commitment fee shall be charged as from the signing date of this Agreement until the Disbursement Date.

**6.    Interest**

6.1    *General provisions regarding interest.* The following general provisions shall apply with respect to interest:

(a)    Interest shall be paid on each Loan Amount as from the date the account maintained for the Borrower at KfW is debited with such Loan Amount to the date the amount necessary for repayment thereof is credited to the account referred to under clause 8.4 (*Account*).

(b)    KfW shall promptly notify the Borrower of the interest rates determined under this Agreement.

6.2    *Interest Payment Dates.* The interest accruing on a Loan Amount shall be paid by the Borrower in arrears on the last day of an Interest Period and, if the respective Interest Period is longer than three months, three months after the last day of the previous Interest Period.

6.3    *Interest payments at a Variable Interest Rate.* Interest will be payable on each Loan Amount on the basis of consecutive Interest Periods pursuant to the following provisions:

(a)    *Interest rate.* The Borrower shall pay KfW interest at a rate which is calculated on the basis of LIBOR  applicable for the relevant Interest Period plus a margin of 400 bps p.a. (in words: four hundred basis points per annum).

(b)    *Interest Periods.* The Interest Periods are determined as follows:

(i)    Subject to the following provisions, the Borrower may select Interest Periods having a respective duration of either three or six months:

(ii)    The Interest Period to be selected by the Borrower may end no later than on the Final Maturity Date.  If the Borrower selects a longer Interest Period then KfW shall shorten such period accordingly.

(iii)    If the Borrower fails to exercise its option by the fifth Banking Day before the Disbursement Date, or on the fifth Banking Day prior to the expiration of the current Interest Period, then the relevant Interest Period shall be three months.



24/59

8

(iv)   The first Interest Period shall commence on the Disbursement Date. The subsequent Interest Periods shall each commence on the last day of the preceding Interest Period, and the last Interest Period shall end on the Final Maturity Date.

(v)   If the last day of an Interest Period falls on a day which is not a Banking Day, it shall be extended to the next Banking Day unless such Banking Day falls into the next calendar month. In this case, the Interest Period shall end on the last Banking Day of the then current calendar month. The next Interest Period shall commence upon expiration of the adjusted Interest Period. The interest rate valid until the original end of the Interest Period shall apply with respect to the extension period.

(c)   *Calculation of interest.* Interest will accrue as from the first day of the Interest Period (inclusive of this day) to the last day of the Interest Period (exclusive of this day) and will be calculated in accordance with clause 8.1 (*Calculation*).

7.   **Repayment and Early Repayment**

7.1   *Repayment.* The Borrower shall repay the Loan to KfW in 24 (in words: twenty-four) equal consecutive quarterly instalments, the first repayment instalment being due on the earlier of (i) the date falling three months after the Vessel`s re-employment (anticipated to be August 31, 2012) and (ii) September 30, 2012.

7.2   *Early prepayment.* The following provisions apply with respect to early prepayment:

(a)   *Right to make early prepayment.* The Borrower may, subject to Clauses 7.2(b)(*Prepayment Penalty*) and 7.5 (*Prepayment Fee*), prepay a Loan Amount in whole or in part, prior to its scheduled maturity. Any such early repayment shall be in a minimum amount of USD 1,000,000 (in words: one million US-Dollars) and shall be made on the last day of the relevant Interest Period.

(b)   *Prepayment Penalty.* In case of an early prepayment pursuant to clause 7.2(a) (*right to make early prepayment*) above, the Borrower shall pay to KfW a prepayment penalty (i) of 200 bps (in words two hundred basis points) on any Loan Amount prepaid on or prior to the first anniversary of the Disbursement, (ii) of 150 bps (in words one hundred fifty basis points) on any Loan Amount prepaid on or prior to the second anniversary of the Disbursement, (iii) of 100 bps (in words one hundred basis points) on any Loan Amount prepaid on or prior to the third anniversary of the Disbursement and of 50 bps (in words one fifty basis



25/5?

9

points) on any Loan Amount prepaid on or prior to the fourth anniversary of the Disbursement. Any prepayments after the fourth anniversary of the Disbursement shall not be subject to a prepayment penalty. Clause 7.5 (*Prepayment Fee*) remains unaffected.

(c)   *Notification.* The early prepayment of a Loan Amount shall be subject to the condition that the Borrower notifies KfW of such early prepayment no later than on the tenth Banking Day prior to the intended prepayment date. The notification shall be irrevocable; it shall state the date and the amount of the early prepayment and shall oblige the Borrower to prepay the stated amount on the stated date.

7.3   *Mandatory Prepayment in case of Total Loss.* If the Vessel becomes a Total Loss (as defined in Clause III.3.2.1 of the General Terms) the Borrower shall on the earlier of (1.) one hundred and eighty (180) days after such Total Loss has occurred or is deemed (pursuant to Clause III.3.2.2 of the General Terms) to have occurred and (2.) the date of acceptance of the Total Loss (where the occurrence of the event giving rise to such Total Loss is a risk covered by the Insurances) by the relevant war risks association or underwriters and (3.) the day on which insurance proceeds or other compensation monies in respect of the Total Loss have been received by the Borrower or KfW (irrespective of whether such proceeds or monies are sufficient to repay the Loan in full) prepay the entire outstanding principal of the Loan.

7.4   *Mandatory Prepayment in Case of Sale of Vessel.* If the Vessel is sold by the Borrower, the Borrower shall forthwith prepay the entire outstanding principal of the Loan.

7.5   *Prepayment Fee.* If, before expiration of the relevant Interest Period, the Borrower prepays (whether mandatorily or voluntarily) any Loan Amount it shall be obliged to pay KfW a Prepayment Fee for such early repayment. KfW shall determine and notify the Borrower of the amount of such Prepayment Fee.

7.6   *Amounts due and payable.* The Borrower must pay the following amounts in addition to and together with the early prepayment:

(a)   the Prepayment Fee (if any) incurred as a result of the early repayment;

(b)   the Prepayment Penalty (if any); and

(c)   all interest accrued on the prepaid Loan Amount up to the date of the early repayment.



26/5

10

7.7   *Application.* Each early repayment shall be applied to the outstanding Repayment Instalments in reverse chronological order.

**8.    Calculations and Payments in General**

8.1   *Calculation.* Interest, commitment fee, default interest, lump sum damages for overdue amounts, Non-Utilisation Fees and Prepayment Fees will be calculated on a 360-day year basis, taking into account the actual number of days expired.

8.2   *Banking Day.* If the due date for any payments in connection with this Agreement is not a Banking Day, the Borrower shall make the payment on the next succeeding Banking Day.   If the next succeeding Banking Days falls within the next calendar month, the respective payment shall be effected on the last Banking Day of the then current calendar month.

8.3   *Currency.* All payments by the Borrower shall be made in US Dollars.

8.4   *Account, Time.* The Borrower shall be released of its payment obligations in connection with this Agreement as soon as and to the extent that the relevant amounts denominated in USD have been credited to KfW without any deduction no later than by 10 a.m. for its free disposal, by way of payment into its account with the following designation:

> account no. 10926093 with Citibank N.A., New York (BIC CITIUS33) in favour of account no.96429588812 with KfW (BIC KFWIDEFF) SWIFT MT202:
> 56A:CITIUS33, 57A:/10926093 KFWIDEFF
> 58A:/9629588812 KFWIDEFF, 72:/BNF/Explorer Maritime

8.5   *Application of partial payments.* If any payment received in connection with this Agreement (including the realisation of security) is insufficient to settle all of KfW 's claims against the Borrower due and payable at the time of receipt of payment, then, irrespective of any conflicting determination made by the Borrower in respect of the application of such payment, KfW may apply such payment in the following order of priority:

(a)   firstly, in or towards payment of any fees, costs, expenses and amounts pursuant to clause 8.7 (*Default interest*) and 8.8 (*Lump sum damages*);

(b)   secondly, in or towards payment of interest and Prepayment Fees and Prepayment Penalties;

(c)   thirdly, in or towards payment of Repayment Instalments and any early repayments pursuant to clause 7.2(a) (*Early repayment* ) which have fallen due;



11

(d) fourthly, in or towards payment of any other of the Borrower's payment obligations under this Agreement; and

(e) fifthly, in or towards payments of any of the Borrower's payment obligations *vis-à-vis* KfW under other agreements.

Except with respect to early repayments, which are governed by clause 7.7 (*Early repayment*), the application of payments shall in each case be performed in the order of the maturities.

8.6 *No counterclaims by Borrower*. The Borrower shall not be entitled to assert any rights of retention or set-off or comparable rights against any repayment obligations arising under this Agreement unless such claims have been finally determined in a legally binding manner or are undisputed on the part of KfW.

8.7 *Default interest*. Without issuing any prior reminder KfW, may charge default interest on overdue Repayment Instalments and overdue early repayments pursuant to clause 7.2 (*Early repayment*) at a rate of 2% p.a. (in words: two percent per annum) above one month-LIBOR plus the margin set forth in clause 6.3(a) (*Interest payments at a Variable Interest Rate*), from the maturity date to the date of payment.  The default interest shall be paid without undue delay at KfW's first demand.

8.8 *Lump sum damages*. Without issuing any prior reminder, KfW may demand lump sum damages on overdue amounts (with the exception of the amounts specified in clause 8.7 (*Default interest*)) at a rate of 2 % p.a. (in words: two percent per annum) above one month-LIBOR, from the maturity date to the date of payment of the lump sum damages.  The lump sum damages shall be paid promptly at KfW's first demand.  The Borrower shall be free to prove that no damage was in fact incurred or that the damages were not incurred in the amount as stated.

8.9 *Indemnity against currency losses*. Should KfW receive any payment due in connection with this Agreement in a currency other than the agreed currency and if, following conversion into the agreed currency, the payment proves to be less than the payment in the currency due under the Loan Agreement, then the Borrower shall be obligated to refund the shortfall to KfW.

9. **Taxes, Duties and Costs**

9.1 *No deductions or withholdings*. All payments made by the Borrower on the basis of this Agreement and the Security Documents shall be made without any deductions



or withholdings. In the event that the Borrower is required by law or for any other reason to make deductions or withholdings from any payments, then it shall pay any such necessary additional amounts to KfW so that the net amount remaining after any withholding or deduction corresponds to the amount which would have been payable had no such deduction or withholding been made.

9.2   *Duties, costs and expenses.* Taxes, charges, other public duties (*öffentliche Abgaben*), costs and expenses (including legal fees and expenses) incurred in connection with the preparation, negotiation, execution, registration, implementation, amendment, safekeeping or enforcement of this Agreement, the Security Documents and any other documents relating thereto as well as the rights arising therefrom shall be borne by the Borrower.

9.3   *Costs for reports.* Any costs and expenses incurred in connection with evidence, reports, certificates, expert opinions or other documents and information which must be provided by the Borrower to KfW in connection with this Agreement, the Security Documents and all other documents relating thereto, shall be borne by the Borrower.

9.4   *Reimbursement of expenses.* If KfW pays the costs which must be borne by the Borrower pursuant to clause 9.2 (*Duties, costs and expenses*) and clause 9.3 (*Costs for reports*), then at KfW's request, the Borrower shall promptly reimburse KfW for any expenses thereby incurred.

9.5   *Increased Costs.* The following shall apply with respect to Increased Costs:

(a)   At KfW 's request the Borrower shall promptly reimburse KfW for any such Increased Costs, which are incurred as a result of

   (i)   any modifications to the legal requirements to which KfW is subject  or in the interpretation or application of such requirements or

   (ii)   the compliance with any request or requirement (*Vorgabe*) issued by any central bank, the banking and/or capital market supervisory authority or any fiscal or other authority (irrespective of whether this request or requirement is legally binding) that was made or entered into force following the conclusion of this Agreement.

(b)   **Increased Costs** shall be:

   (i)   any additional or increased costs of KfW



13

(ii)   a reduction in KfW 's percentage return on equity  or

(iii)   any reduction of an amount owed by the Borrower to KfW,

to the extent such costs and reductions arise in connection with the Loan. Any taxes on KfW's revenues or income levied in Germany shall not be included in the calculation of the Increased Costs.

(c)   KfW shall notify the Borrower of the reasons for the Increased Costs and, at the Borrower's request, shall provide a reasonably detailed statement setting forth the calculation of the amount to be reimbursed.

9.6   *Market disruption.*  The following will apply:

(a)   If a Market Disruption Event occurs, then for the relevant Interest Period the Borrower must pay KfW interest on the Loan at a rate equal to the aggregate of:

(i)   the margin pursuant to clause 6.3(a) of this Agreement; and

(ii)   the rate, notified by KfW to the Borrower at least one Banking Day before the first day of the relevant Interest Period, which will be calculated on the basis of the arithmetic mean of the relevant ask side of the three Reuters Brokers pages KLIEMMM, GARBIC01 und FINA01 (**"Money Market Rate"**).

(b)   If the above-mentioned Reuters Broker pages are not available, KfW will in its reasonable discretion use an alternative Money Market Rate that reflects its refinancing costs.

(c)   A "**Market Disruption Event**" will be deemed to have occurred, if:

(i)   by at the latest on the second Banking Day before the first day of the relevant Interest Period, KfW notifies the Borrower that its refinancing costs are in excess of the then prevailing LIBOR rate; and

(ii)   the Money Market Rate on that day is at least 0.25% above the LIBOR rate.

9.7   *Negotiation clause.*  The following will apply:

(a)   If a Market Disruption Event occurs KfW will, at the Borrower's request, enter into negotiations about agreeing an appropriate alternative method for determining the interest rate, which are to last not longer than 30 days.

Loan Agreement Explorer Maritime Cruises LLC



(b) If pursuant to clause 9.7(a) the parties agree on an alternative method, this will be binding for the relevant Interest Period.  If within such period of 30 days the parties do not reach any agreement, the interest rate determined in accordance with clause 9.6(a) will apply for the relevant Interest Period.

## 10. Security

10.1 *Security*. To secure the Borrower's payment obligations under the Finance Documents the Borrower undertakes to procure, create, register (where appropriate) and maintain in full force and effect the following security in favour of KfW and to execute and deliver the security documents relating thereto substantially in the form of the drafts attached hereto as Exhibits or (if no Exhibits are provided for) otherwise satisfactory to KfW:

(a) registration of a first preferred ship mortgage executed by the Borrower in favour of KfW over the Vessel to be recorded at the National Vessel Documentation Center of the United States Coast in an amount of USD 10,000,000. .

(b) Assignment of all Earnings of the Vessel by the Borrower ;

(c) first priority assignment of the Insurances  together with **(1.)** KfW's appointment as first loss payee (except for P&I insurance) for amounts exceeding USD 1,000,000 (in words: one million US-Dollars with respect to each insured event and **(2.)** notices of assignment (for attachment by way of endorsement to the respective insurance policies) to and acknowledgement by the insurers or the respective main insurer, together with the usual letter of undertaking of the respective broker(s) and war risks and protection and indemnity association(s);

(d) pledge agreement regarding the limited liability company interests in the Borrower, including any monetary claims pertaining to such limited liability company interests;

(e) pledge agreement regarding the Earnings Account.

10.2 *Security Agent*. KfW is entitled to appoint an agent on such terms as KfW deems fit to act on its behalf in connection with its rights under the Security. The cost of such agency shall be borne by the Borrower.

Loan Agreement Explorer Maritime Cruises LLC



15

11.  **Representations and Warranties by the Borrower**

11.1  *Representations and warranties.* The Borrower expressly represents and warrants to KfW that the following is true and correct:

(a)  *Existence of legal entity.* The Borrower is a limited liability company duly incorporated and validly existing under the laws of Delaware.

(b)  *Power and authority.* To the extent necessary, the Borrower's competent corporate bodies have consented to the Borrower's execution of the Finance Documents and the performance of the obligations arising therefrom, and the signatories have the necessary power of representation to execute the Finance Documents.

(c)  *Non-conflict with other obligations.* The execution and implementation of the Finance Documents by the Borrower do not and will not conflict with any legal provisions, any decision by a public authority or court, and do not breach the terms and provisions of the Borrower's constitutional documents or any agreements with third parties.

(d)  *Official authorisations.* All governmental approvals, consents, licenses or authorisations required in connection with the Borrower's execution and implementation of the Finance Documents have been granted and are in full force and effect.

(e)  *Legal validity.* The Finance Documents executed by the Borrower constitute legally binding and enforceable obligations of the Borrower.

(f)  *Accurate financial information.* The statements regarding the assets, the financial condition and the results of operations as well as the business operations of the Borrower, which were submitted by the Borrower for the purpose of the granting of this Loan, are complete and accurate and have not until the time of execution of this Agreement changed in such a way that might adversely affect or jeopardise the Borrower's performance of its obligations under this Agreement.

(g)  *Accurate Periodic Reports.* The most recent Periodic Reports submitted to KfW in each case give a fair view of the Borrower's assets, its financial condition and its results of operations as well as of its business operations as of the date to which respective accounts were prepared.

(h)  *No Event of Default.* No Event of Default and no Potential Event of Default exists.



32/5

16

(i) *Legal disputes.* The Borrower is neither party to, involved in or otherwise affected by any judicial, arbitration or administrative proceedings or any other legal disputes which could have a material adverse effect on the Borrower's assets, financial condition or results of operation or which could otherwise impair or jeopardise the Borrower's ability to perform any of its obligations under the Finance Documents.

(j) *Off balance sheet Financial Indebtedness.* The Financial Indebtedness not reflected on the Borrower's balance sheet does not exceed USD 1,000,000 (in words: one million US-Dollars in total.

(k) *Negative pledge.* To the extent the Borrower has not reported otherwise, the assets of the Borrower are free and clear from any Encumbrances, and the Borrower has not agreed to create any such Encumbrances.

(l) *Taxes and duties.* No claims for taxes and duties, which if assessed could have a material adverse effect on the Borrower's assets, financial condition or results of operations or could otherwise impair or jeopardise the Borrower's ability to perform its obligations under the Finance Documents, have been asserted against the Borrower, nor has the Borrower received any notification thereof.

(m) *Money laundering.* In entering into and implementing this Agreement the Borrower acts in its own name and for its own account.

11.2 *Time for making representations.* The representations and warranties set forth in this clause are made for the first time by execution of this Agreement. With the exception of clause 11.1(j) (*Representations and warranties*) they will be repeated upon each drawing of the Loan and shall be deemed to be repeated upon the issuance of each Compliance Certificate, in each case by reference to the circumstances prevailing at that date.

## 12. Financial Ratios

12.1 *Financial Ratios.* For as long as KfW has any claims against the Borrower under the Finance Documents, the Borrower undertakes to comply with the following Financial Ratios:

(a) *Debt to equity ratio.* At all times, the Borrower's debt to equity ratio may not exceed 50:100.

(b) *Minimum Cash.* Cash held by the Borrower on the Earnings Account shall at no times be lesser than USD 1,500,000 (in words: one point five million US-Dollars).



17

12.2 *Basis of calculation.* The Financial Ratio pursuant to 12.1(a) (*Debt to equity ratio*) will be calculated on the basis of the Quarterly Report relating to the applicable reporting date.

12.3 *Annual confirmation by auditor.* When presenting the Annual Financial Statements to KfW, the Borrower shall furthermore demonstrate that it has complied with the Financial Ratio pursuant to 12.1(a) (*Debt to equity ratio*) by submitting a corresponding auditor's confirmation.

12.4 *Compliance Certificate.* Together with each Quarterly Report, the Borrower must also provide a Compliance Certificate to confirm compliance with the Financial Ratio requirements as of the end of the respective financial quarter.

12.5 *Verification by KfW.* If, after having conducted a plausibility check, KfW has any doubts about the correctness of the documents submitted pursuant to clause 12.3 (*Annual confirmation by auditor*) or pursuant to or 12.4 (*Compliance Certificate*) to prove compliance with the Financial Ratio requirements, then KfW may instruct an auditor to perform a verification at the Borrower's cost.

12.6 *Non-compliance with Financial Ratio requirements.* In the event the Borrower fails to comply with the Financial Ratio requirements, KfW may request the Borrower to provide it with additional valuable security. This shall not affect any of KfW 's rights of termination pursuant to clause 15.1 (*Grounds for Termination*).

**13. Undertakings of the Borrower**

13.1 *Change of business activity.* The Borrower shall not without the prior consent of KfW change to a material extent the business activity in which it was engaged at the time this Agreement was executed.

13.2 *Accounting.* The Borrower shall prepare the Periodic Reports and documents proving compliance with the Financial Ratio requirements in accordance with applicable law. If the Borrower plans to change or deviate from the accounting principles it has thus far applied (including the exercise of any accounting options or discretion) it must notify KfW hereof in due time. A change of the accounting principles shall not be permissible unless the parties have, to the extent necessary, modified the Financial Ratios such that their informative value is preserved.

13.3 *Insurances.* The Borrower undertakes with KfW that the Vessel will be kept insured, at the Borrower's expense in USD in accordance with the requirements set forth in Clauses VI.1 and VI.2 of the General Terms. In addition, the Borrower

Loan Agreement Explorer Maritime Cruises LLC



shall in respect of the insurances to be effected for the Vessel ("**Insurances**") comply with each covenant and undertaking set forth in Clauses VI.3 to VI.6 of the General Terms (*Insurances*) and in the Mortgage.

13.4 *Encumbrances.* Without the prior consent of KfW the Borrower shall not create or tolerate the existence of any Encumbrance upon any of its assets. This obligation shall not apply:

(a) with respect to any Encumbrances in existence or already agreed upon at the time of conclusion of this Agreement, of which KfW was notified,

(b) with respect to any Encumbrances arising in the ordinary course of business on the basis of statutory or customary contractual provisions for securing liabilities (with the exception of liabilities under loans) owing to suppliers or other providers of services or goods (for example retentions of title and statutory liens customary in the industry),

(c) with respect to any Encumbrances already in existence at the time of an asset's acquisition, provided that these will be discharged within a period of three months following acquisition, and

(d) in relation to any assets other than the Vessel only, to the extent the respective claims secured do not exceed a total amount of USD 1,000,000 (in words: one million US-Dollars) or their equivalent value in another currency.

Clauses V.2.4 (*Disposals of the Vessel*) and V.2.5 (*Vessel to be kept from rights of third parties*) of the General Terms remain unaffected.

13.5 *Disposals.* Without the prior consent of KfW the Borrower shall not dispose of its assets, either in whole or in part, if the aggregate market value to be established at the time of disposal of the respective asset items exceeds the sum of USD 1,000,000 (in words: one million US-Dollars).. Clauses V.2.4 (*Disposals of the Vessel*) and V.2.5 (*Vessel to be kept from rights of third parties*) of the General Terms remain unaffected.

13.6 *New Financial Indebtedness.* The Borrower shall not incur any new Financial Indebtedness if, at any time until the Borrower has fully discharged its payment obligations under this Agreement, the total Financial Indebtedness (without taking into account the liabilities under this Loan Agreement) exceeds USD 1,000,000 (in words: one million US-Dollars).



19

13.7 *Earnings Account.* The Borrower shall procure that any monies payable under any Insurance (unless paid directly to the Borrower in accordance with the Assignment of Insurances) and all Earnings (unless paid directly to KfW in accordance with the Assignment of Earnings) shall be paid into the Earnings Account.

13.8 *Pari passu ranking.* The Borrower shall ensure, to the extent legally possible, that its payment obligations under this Agreement rank at least *pari passu* with all its other present and future unsecured and unsubordinated payment obligations.

13.9 *Further Undertakings relating to the Vessel.* The Borrower shall:

(a) comply with each undertaking set forth in Clause V. (*Obligations regarding the Vessel*) of the General Terms

(b) if at any time the fair market value of the Vessel falls short of one hundred and twenty (120) percent of the principal amount outstanding under the Loan promptly upon KfW's request either **(1.)** prepay such part of the Loan which remedies the shortfall, together with prepayment compensation as specified in Clause III.3.3 of the General Terms or **(2.)** provide such additional ship mortgage or other security in favour of KfW as is acceptable to KfW and having a market value remedying the shortfall or **(3.)** effect a combination of (1.) and (2.) above. The Borrower will pay the costs of an annual statement of the fair market value of the Vessel which shall be obtained by KfW, and if an Event of Default has occurred and is continuing of such additional statements of the fair market value of the Vessel as KfW may require in its sole discretion. The valuations shall be performed yearly in December and shall each be based on the average of the valuations of two approved shipbrokers or any such other brokers as KfW may approve; and

(c) procure that itself, and each subsequent charterer (if any) will use the Vessel only for the own operation.

## 14. Information Covenants

14.1 *Financial information.* The Borrower shall furnish KfW with the following information regarding the Borrower's financial condition:

(a) *Periodic Reports.* Period Reports on the dates specified in Annex 4.

(b) *Material incidents in the Borrower's business.* Information relating to material incidents in the Borrower's business which may have a material adverse effect on the Borrower's assets, financial condition or results of operations and which are not taken into account in the Business Plan.



(c) *Other information.* At KfW's request, any other information (for example statements and records concerning the business operation and the Borrower's current assets, financial condition and results of operations).

14.2 *Particular information.* The Borrower agrees to inform KfW, promptly and of its own accord, of the occurrence of any of the following events:

(a) *Legal disputes.* The Borrower becomes a party to, involved in or is otherwise affected by any judicial, arbitration or administrative proceedings or any other legal disputes which could have a material adverse effect on the assets, financial condition or results of operation of the Borrower or which could impair or jeopardise in any way the Borrower's ability to perform any of its obligations under this Agreement.

(b) *Event of Default.* An Event of Default or a Potential Event of Default occurs.

(c) *Further events.* Any other event occurs or threatens to occur that could impair or jeopardise the Borrower's ability to perform any of its obligations under this Agreement.

## 15. Termination

15.1 *Events of Default.* KfW may exercise the rights set forth under clause 15.2 (*Legal consequences of an Event of Default*) if an event occurs which constitutes a material reason (*wichtiger Grund*). In particular, the following events shall each constitute a material reason:

(a) *Non-payment.* The Borrower fails to discharge a payment obligation owed to KfW under this Agreement or under any other agreement until the end of the fifth Banking Day after it has become due and payable.

(b) *Other breaches of duty that cannot be cured.* The Borrower does not comply with its obligations pursuant to clause 13.2 (*Accounting*), 13.4 (*Encumbrances*), 13.5 (*Disposals*) or clauses V.2.3 (*Registration in the Ship Register and Flag*), V.2.4 (*Disposals of the Vessel*) of the General Terms.

(c) *Other breaches of duty that can be cured.* The Borrower does not comply with an obligation not referred to In sub-paragraphs (a) and (b) which it owes to KfW under this Agreement, the Security Documents or any other agreement unless it is possible to cure this breach and it is cured within 30 days after it has occurred.

Loan Agreement Explorer Maritime Cruises LLC



(d)  *Misrepresentation.* Any written statement, confirmation or representation made by the Borrower in this Agreement or any Security Document or following conclusion of this Agreement in connection with the Loan is in any material respect incorrect, misleading or incomplete at the time it is made or deemed to have been repeated.

(e)  *Cross default.* The Borrower fails to discharge its Financial Indebtedness owing to third parties within five Banking Days after such obligations have become due and payable if such Financial Indebtedness exceeds a total amount of USD 1,000,000 (in words: one million US-Dollars) or the equivalent amount in other currencies.

(f)  *Invalidity and lack of enforceability.* This Agreement, either in whole or in part, no longer has any binding effect for the Borrower or can no longer be enforced against the Borrower.

(g)  *Creditor's process.* Execution proceedings are levied upon the Borrower's assets on account of a sum amounting to a least USD 1,000,000 (in words: one million US-Dollars).

(h)  *Insolvency or composition.* One of the following events occurs in relation to the Borrower:

  (i)  a cause for the initiation of insolvency proceedings pursuant to the insolvency provisions applicable to the Borrower;

  (ii)  a petition to institute insolvency proceedings (unless such a petition is denied or withdrawn within a period of thirty days);

  (iii)  a decision ordering safeguarding measures;

  (iv)  an initiation of insolvency proceedings or denial of the petition to initiate insolvency proceedings for lack of assets;

  (v)  negotiations are entered into with one or several of its creditors (excluding KfW ) concerning the waiver of outstanding claims or an extension of the time for repayment.

(i)  *Dissolution.* The Borrower is dissolved pursuant to a dissolution order or by operation of law, or it ceases its business operations.

(j)  *Impairment of Security.* There is a significant deterioration in the value of any Security or any Security is or becomes invalid or unenforceable, and the

Loan Agreement Explorer Maritime Cruises LLC



Borrower fails to provide a valid and economically equivalent substitute security within fourteen days from the time it became aware or should have become aware of the event. Clause 13.9(b) (*Further undertakings relating to the Vessel*) remains unaffected.

(k) *Flag.* the Vessel loses the right to fly the flag it flies from time to time or the registration of the Vessel is cancelled or terminated without the prior written consent of KfW or, if the Vessel is only provisionally registered on the date of the Disbursement, the Vessel is not permanently registered within one (1) month after the Disbursement;

(l) *Insurances.* The *Insurances* on the Vessel or any of them are cancelled due to non-payment of premiums or otherwise cease to be legally valid and binding upon the underwriters;

(m) *Change of the corporate structure.* One of the following events occurs without the prior consent of KfW:

   (i) a change in the legal form of the Borrower,

   (ii) a Change of Control in relation to the Borrower.

(n) *Material adverse change.* The business operation or the assets, the financial position or the results of operation of the Borrower change such that in KfW's reasonable judgment the performance of the Borrower's obligations under this Agreement will be jeopardised or substantially delayed.

15.2 *Legal consequences of an Event of Default.* If an Event of Default has occurred, KfW may terminate this Agreement in whole or in part, thereby giving rise to the following consequences:

(a) its obligations under this Agreement will be cancelled and

(b) KfW shall have the right to demand immediate full or partial repayment of the outstanding Loan Amount together with the accrued interest thereon and any other amounts owed under this Agreement. Clause 8.7 (*Default interest*) and 8.8 (*Lump sum damages*) shall apply *mutatis mutandis* to any amounts which have been accelerated under this Clause.

15.3 *Damages.* In the event that the Loan Agreement is terminated in whole or in part, the Borrower shall pay a Non-Utilisation Fee pursuant to clause 4.4 (*Non-utilisation*) and/or a Prepayment Fee pursuant to clause 7.5 (*Prepayment Fee*).



### 16.   Transfer of Rights and Obligations

16.1   *Assignment of claims by the Borrower.* The Borrower may not assign, charge or otherwise dispose of (*verfügen*) any of its claims or rights under this Agreement and the Security Documents without KfW's prior consent.

16.2   *Transfer of the Loan by KfW.* KfW  may transfer all its rights and obligations under this Agreement and the Security Documents to another bank. As long as no Event of default as described under clause 15.1 has occurred such transfer requires the Borrower's consent which may not unreasonably be withheld. KfW  will inform the Borrower of the date on which the transfer of KfW's rights and obligations to the new lender occurs. If, by reason of circumstances already existing at the transfer date, the Borrower would be obliged to make a payment to the new lender under clause 9.1 (*No deductions or withholdings*) or clause 9.5 (*Increased Costs*), it need pay the new lender only such an amount as it would have been obliged to pay KfW if the transfer had not occurred. KfW shall bear the costs of the transfer.

16.3   *Assignment of claims by KfW.* KfW may assign, charge or otherwise dispose of (*verfügen*) all or part of its claims and rights under this Agreement and the Securities Documents. Clause 16.2, sentence 4, with the modification that the relevant time will be the effective date of the disposal (*Verfügung*) in question and clause 16.2 sentence 5 will apply *mutatis mutandis.*

16.4   *Risk participations.* KfW may without the consent of the Borrower grant risk participations to one or more banks in all or a portion of KfW's rights and/or obligations under this Agreement.

### 17.   General Provisions

17.1   *Place of performance.* Place of performance for all obligations under this Agreement is Frankfurt am Main.

17.2   *Severability.* If a provision of this Agreement is or becomes invalid or if this Agreement contains unintentional gaps, this will not affect the validity of the remaining provisions of this Agreement. The parties will replace any invalid provision with a provision which comes as close as possible to the purpose and intent of the invalid provision. The parties will fill any unintentional gap with a provision which best suits the purpose and intent of this Agreement.

17.3   *Exercise of rights.* If KfW does not exercise or exercises only partially any of its rights under this Agreement, then this shall not constitute a waiver of such a right –



24

in particular, not for the future. The single or partial exercise of any right by KfW will not prevent any further exercise of such a right nor the exercise of any other rights in the future.

17.4 *Written form.* Any supplements and amendments to this Agreement must be made in writing. Any waiver by the parties of this writing requirement must also be in writing.

17.5 *Limitation period.* KfW's claims arising out of this Agreement will become statute barred five years after the end of the year in which the claim arose and in which KfW had obtained actual knowledge of the circumstances giving rise to the claim or could have obtained acutal knowledge without gross negligence.

## 18.   Notices and Communications

18.1 *Addresses.* Any notices or communications in connection with this Agreement must be in writing. Each one must be supplied as an original document or  by fax. If a Drawdown Notice is transmitted by fax, then without prejudice to the effectiveness and timely receipt of the fax transmission, an original version must in addition at KfW's request be supplied without delay. All notices or communications in connection with this Agreement must be sent to the following addresses:

for KfW :

KfW IPEX-Bank GmbH
Department: X2a3 Shipping
Palmengartenstrasse 5 - 9
60325 Frankfurt am Main
Phone: +49 69 7431-8861
Fax: +49 69 7431-2944

for the Borrower:

Explorer Maritime Cruises LLC
132 East 70th Street
New York, N.Y. 10021
U.S.A.
Phone 212/774-1555
Fax: 212/774-1545

18.2 *Electronic communication.* With the exception of Drawdown Notices any notices and communications which are given by means of an electronic document will be deemed to satisfy the requirements set forth under clause 18.1 (*Addresses*), if the person giving any such notice or communication adds his name to it and the electronic document contains a qualified electronic signature pursuant to the

Loan Agreement Explorer Maritime Cruises LLC



*41/59*

25

German Law on Digital Signatures (*Signaturgesetz*) (section 126a German Civil Code - *Bürgerliches Gesetzbuch*).

18.3  *Effectiveness.* Any notices and communications in connection with this Agreement will become effective upon their receipt. Unless the notice or communication concerned is a Drawdown Notice, each one will be deemed to be received:

 (a)  if sent by letter

   (i)  through the normal post or by courier, five days after being deposited in the post or handed to the courier; or

   (ii)  by registered post with return receipt (*Einschreiben mit Rückschein*), on the date stated in the return receipt; or

   (iii)  by registered post with advice of delivery (*Einwurfeinschreiben*), on the date stated in the proof of delivery; or

 (b)  if it is sent by fax, when dispatched if the sender's fax machine has produced a printed confirmation that the fax has been transmitted error free.

**19.  Applicable Law and Jurisdiction**

19.1  *Applicable law.* This Agreement is governed by German law. However, Clause 7.2(a) (*Prepayment Penalty*) shall be governed by the laws of England and Wales.

19.2  *Exclusive jurisdiction.* The competent courts of Frankfurt am Main shall have exclusive jurisdiction to settle any disputes in connection with this Agreement, including a dispute as to its validity. Furthermore, KfW has the right to take proceedings regarding any such dispute before any other court of competent jurisdiction. The Borrower irrevocably agrees to the jurisdiction of any such court.

19.3  *Process agent.* Until all obligations arising out of this Agreement have been performed, the Borrower must appoint and retain a person in Frankfurt am Main acceptable to KfW as process agent to receive service of process in any proceedings before German courts regarding this Agreement.

19.4  *Waiver of immunity.* To the extent that at the date of this Agreement or at any time in the future the Borrower can claim for itself or its assets immunity in any jurisdiction, whether it be immunity from proceedings, from execution or from other legal process, the Borrower irrevocably waives any such immunity to the extent permitted by the laws of the relative jurisdiction.



42/59

26

19.5 *Waiver of security for costs.* The Borrower waives any right it may have to require KfW to give security for costs in any court proceedings.

## 20.   German VAT regulations

All services provided by KfW under this Agreement are VAT exempt financial services. KfW's VAT identification number *(Umsatzsteuer-Identifikationsnummer)* is DE 254097700.

## 21.   Entire Agreement

This instrument contains the entire agreement between the parties hereto, and it cannot be changed, modified or terminated, except by written agreement. It is agreed that this Agreement supersedes any provisions contained in any other agreement between the parties.


Frankfurt am Main
dated .19... Jan... 2012

**KfW**

duly represented by KfW IPEX Bank GmbH

Name:   WIEDERS   SVP
Title:

Name:   Schultze
Title:   VP

...............................................
dated .19. January 2012

**Explorer Maritime Cruises LLC**

Name:   GEORGE PAPAGAPITOS
Title:   Managing Member

Name:   Vassos Papagapitos
Title:   Managing Member

43/59

Annex 1

**[On Borrower's notepaper]**

[Date]

KfW IPEX-Bank GmbH
Department X2a3 Shipping
Palmengartenstrasse 5 - 9
60325 Frankfurt am Main
Germany

## Drawdown Notice

US-Dollar 10,000,000 Loan Agreement dated [...] (the **Agreement**) – Loan No.: 8805

Dear Sirs,

We refer to the Agreement. Terms defined in the Agreement have the same meaning in this Notice.

We hereby give you notice that we wish to borrow (as applicable):

Loan Amount in the amount of US-Dollar [●]

We wish you to disburse the Loan amount on the following date:[●]

We confirm that each of the conditions specified in Annex 2 of the Agreement are satisfied on the date of this Notice.

The amount should be credited to [account].

This Notice is irrevocable.

Yours faithfully

Annex 1 of the Loan Agreement between KfW and Explorer Maritime Cruises LLC: Drawdown Notice



4 4/59

2

...........................................
on ..............................

**Explorer Maritime Cruises LLC**

..........................................   ....................................

Name:

Title:

45/59

Annex 2

## Conditions for disbursement

KfW IPEX-Bank has received in form and substance satisfactory:

1.  *Constitutional documents.*  Certified copies of the articles of incorporation of the Borrower.

2.  *Commercial register extracts.*  Recent certified extracts from the relevant commercial register of the Borrower.

3.  *Resolutions of the Borrower's Manager and members.*  Resolutions of the Borrower's Manager and members (approval of conclusion of the Loan Agreement and the Security).

4.  *Personal identification documents.*  Certified copies of personal identification documents of the persons who will sign the Loan Agreement and act on behalf of the Borrower.

5.  *Specimen signatures.*  Specimen signatures of the persons acting for the Borrower.

6.  *Executed originals.*  Executed originals of all Finance Documents.

7.  *Legal opinions.* Legal opinions of KfW IPEX-Bank's legal advisers acceptable to KfW IPEX-Bank, confirming, inter alia, the valid creation of security under applicable laws (other than German law), and legal opinion of Borrower's legal advisers acceptable to KfW IPEX-Bank, confirming, inter alia, due execution of the Finance Documents.

8.  *Security.*  Evidence that the Security has been validly granted.

9.  *Other documents.*  A copy of any other document, declaration, authorisation, opinion or assurance specified by KfW IPEX-Bank.

10. *No Event of Default.* Neither an Event of Default nor a Potential Event of Default has occurred.

11. *Management Fee.* KfW IPEX-Bank has received all the management fee pursuant to clause 5.1 (*Management Fee*) of this Agreement.

12. *Commitment Fee.* KfW IPEX-Bank has received all commitments fees being due at the envisaged date of disbursement pursuant to clause 5.2 (*Commitment Fee*) of this Agreement.

Annex 2 of the Loan Agreement between KfW and Explorer Maritime Cruises LLC: Conditions for disbursement



46/59

2

13.  *Representations and Warranties.* The representations and warranties made by the Obligors under the Loan Agreement are true and correct at the date of disbursement.

4.  *Financial Ratios.* A Compliance Certificate evidencing that the Borrower is in compliance with the Financial Ratios.



47/59

Annex 4

**Periodic Reports**

1.    The following terms have the following meaning:

**Business Plans**: the annual business plans of the Borrower including forecasts and explanations for the upcoming financial year.

**Annual Financial Statements**: the annual financial statements of the Borrower in accordance with generally accepted accounting principles and practices applicable to the Borrower, consistently applied in respect of each financial year and certified by an external auditor.

**Quarterly reports**: the quarterly reports of the Borrower including explanations for any deviation from the Business plan.

**Periodic Reports**: the Annual Financial Statement, the Quarterly Reports and the Business Plan.

2.    The Periodic Reports must be forwarded to KfW IPEX-Bank as follows:

(a)    *Business Plan.* The Business Plans must be forwarded by the Borrower at the latest 30 days before the end of each financial period to which they relate.

(b)    *Compliance Certificate.* The Compliance Certificates must be forwarded by the Borrower together with the Annual Financial Statements, on the day falling six months after the day the Annual Financial Statements have been forwarded to KfW IPEX-Bank and prior to each disbursement of the Loan.

(c)    *Annual Financial Statements.* The Annual Financial Statements must be forwarded at the latest six months after the end of each financial period to which they relate;

(d)    *Quarterly Reports.* The Quarterly Reports must be forwarded at the latest 30 days after the end of each quarter of a financial year.



48/59

## ANNEX 5
### FORM OF COMPLIANCE CERTIFICATE

To:     KfW

From:   Explorer Maritime Cruises LLC

Dated:

Dear Sirs

**Loan Agreement No. 8805 dated [ ] 2012 (the "Loan Agreement")**

1.    We refer to the Loan Agreement. This is a Compliance Certificate. Terms defined in the Loan Agreement have the same meaning when used in this Compliance Certificate unless given a different meaning in this Compliance Certificate.

2.    We confirm that the debt to equity ratio is [ ] and that therefore the debt to equity ratio as set out in Clause 12.1 (a) of the Loan Agreement is met.

      We confirm that the cash held by us amounts to [ ] and that therefore the minimum cash requirement as set out in Clause 12.1 (b) of the Loan Agreement is met.

3.    We confirm that no Event of Default is continuing.


Signed     .......................        ...........................

           Director                       Director
           Of                             Of
           [Borrower]                     [Borrower]


Annex 5 of the Loan Agreement between KfW and Explorer Maritime Cruises LLC: Compliance Certificate



49/59

Exhibit 1



## General Terms and Conditions for Ship Financing
### Version: February 2008

### (Borrower is the Owner of the Vessel)

CONTENTS

I.   Scope of Application...........................................1
II.  Definitions and Interpretation..........................1
III. General Loan Conditions .................................2
     III.1. Currency Option......................................2
            III.1.1  General Provisions regarding
                     Redenominations of the Currency .........2
            III.1.2  Equalisation of Exchange Rate
                     Fluctuations on Due Dates of
                     Repayment Instalments (105%-
                     Provision)...............................2
     III.2. Interest ...............................................2
            III.2.1  General Provisions regarding Interest ...2
            III.2.2  Variable Interest Rate...................2
            III.2.3  Fixed Interest Rate .....................3
     III.3. Prepayments ..........................................3
            III.3.1  Voluntary Prepayment...................3
            III.3.2  Mandatory Prepayment in Case of a
                     Total Loss ..............................4
            III.3.3  Prepayment Compensation...............4
            III.3.4  General Provisions for Prepayments ....4
     III.4. Payments in General ...............................4
     III.5. Representations and Warranties ................4
     III.6. Undertakings regarding the Economic
            Situation of the Borrower........................5
IV. Mortgage as Security .......................................5
V.  Obligations regarding the Vessel.......................6
     V.1.  Maintenance of the Vessel.......................6
     V.2.  Operation of the Vessel...........................6
            V.2.1  General Requirements ...................6
            V.2.2  Contracts regarding the Operation of
                    the Vessel ...............................6
            V.2.3  Registration in the Ship Register and
                    Flag .....................................6
            V.2.4  Disposals of the Vessel .................6
            V.2.5  Vessel to be kept free from Rights of
                    Third Parties ............................7
            V.2.6  Compliance with Legal Requirements ...7
            V.2.7  Obligation to Submit Documents .........7
     V.3.  Obligation to Inform KfW IPEX-Bank.................7
     V.4.  Annual Valuation of the Vessel ...................7
     V.5.  Vessel to be Moved upon Event of Default ........7
     V.6.  Obligations regarding Environmental Matters .....7
VI. Insurances......................................................8
     VI.1. General Requirements with respect to
            Insurances ............................................8
     VI.2. Risks to be Covered by the Insurances .............8
     VI.3. KfW IPEX-Bank's Right to Give Instructions
            and to Conclude Insurance Agreements ...........9
     VI.4. Insurance Premiums and Prolongation of
            Insurances ............................................9
     VI.5. Fleet Cover ...........................................9
     VI.6. Annual Review of the Insurances ...................9
VII. General Legal Provisions ...................................9
VIII. VAT Information...............................................9

## I.   SCOPE OF APPLICATION

I.1.   These General Terms and Conditions for Ship Financing („*General Terms*") are applicable in conjunction with the terms and conditions (**1.**) the specific loan agreement („*Loan Agreement*") stating that these General Terms shall apply, such Loan Agreement made or to be made between KfW IPEX-Bank GmbH („*KfW IPEX-Bank*") and the respective borrower ("*Borrower*") and any other party (as the case may be), and (**2.**) any other document stating that these General Terms shall apply.

I.2.   In case of any discrepancy between the provisions of the Loan Agreement and these General Terms the provisions of the Loan Agreement shall prevail.

## II.  DEFINITIONS AND INTERPRETATION

II.1.  Any capitalised term which is used in these General Terms is defined in Clause II.2 or elsewhere in these General Terms by bold letters and shall, unless the context otherwise requires, in these General Terms have the meaning thus assigned to it.

II.2.  Definitions for repeatedly used terms:

„*Banking Day*" means a day (other than a Saturday or Sunday) on which banks are generally open for business in the principal financial centre of a currency (other than the Euro) and at such other places as respectively specified in the Clauses where the term Banking Day is used;

„*Event of Default*" means any event the occurrence of which entitles KfW IPEX-Bank to terminate the Loan Agreement and demand immediate payment of all or any part of the amounts payable under the Loan Agreement;

„*Fixed Interest Period*" has the meaning assigned to such term in Clause III.2.3;

„*Interest Period*" has the meaning assigned to such term in Clause III.2.2;

„*Loan*" means the loan made available by KfW IPEX-Bank under the Loan Agreement;

„*Mortgage*" has the meaning assigned to such term in Clause IV.;

„*Outstanding Indebtedness*" means the Borrower's payment obligations outstanding from time to time under the Loan Agreement and the Security Documents;

„*Relevant Documents*" has the meaning assigned to such term in Clause III.5.2;

„*Security Documents*" means all documents which are executed by the Borrower or third parties for the purpose of providing a security for KfW IPEX-Bank's claims under the Loan Agreement; and

„*Vessel*" means the vessel financed by KfW IPEX-Bank under the Loan Agreement.

II.3.  Unless the context otherwise requires, references in these General Terms to Clauses are references to Clauses of these General Terms.

50/59



Page 2 of the General Terms and Conditions for Ship Financing (February 2008)

## III.   GENERAL LOAN CONDITIONS

### III.1.   CURRENCY OPTION

If the Loan Agreement provides for a right of the Borrower to determine, for Loan amounts to be disbursed or being outstanding from time to time under the Loan Agreement, a currency (*"New Currency"*) other than the currency in which those amounts were denominated immediately prior thereto (*"Existing Currency"*), the following shall apply:

### III.1.1   GENERAL PROVISIONS REGARDING REDENOMINATIONS OF THE CURRENCY

III.1.1.1   Subject to the approval of KfW IPEX-Bank (which shall not be unreasonably withheld) the Loan amounts to be disbursed or being outstanding from time to time under the Loan Agreement will, in the manner and with effect from the dates as specified in the Loan Agreement, be redenominated in the New Currency. Such redenomination (*"Redenomination"*) shall be effected at the spot rate of exchange for the purchase of the New Currency with the New Currency as determined by KfW IPEX-Bank two (2) Banking Days (in Frankfurt am Main and the principal financial centre of the Existing Currency and the New Currency) prior to the date on which the Redenomination becomes effective (*"Exchange Rate Determination Date"*).

III.1.1.2   A Redenomination of a Loan amount being outstanding can only become effective immediately after the end of the respective Interest Period (for Loan amounts bearing a variable interest rate pursuant to Clause III.2.2) or Fixed Interest Period (for Loan amounts bearing a fixed interest rate pursuant to Clause III.2.3).

III.1.1.3   A Redenomination must be requested by the Borrower by giving notice to KfW IPEX-Bank not less than five (5) Banking Days (in Frankfurt am Main) prior to the date on which such Redenomination shall become effective.

III.1.1.4   As of the effective date of a Redenomination, the following shall apply: **(1.)** redenominated Loan amounts to be disbursed under the Loan Agreement shall be disbursed in the New Currency; **(2.)** repayment instalments for redenominated Loan amounts shall be calculated and payable in the New Currency; and **(3.)** interest, fees and like amounts relating to redenominated Loan amounts shall be calculated and payable in the New Currency.

III.1.1.5   A Redenomination or the operation of the provisions in the Loan Agreement relating to the Currency Option shall not constitute, or be construed as, a prepayment of the Loan or any part thereof, or as a novation of rights and obligations of any of the parties to the Loan Agreement and the Security Documents. A Redenomination notwithstanding, the Security Documents shall remain in full force and effect, and the security created by the Security Documents shall stand as security for the Loan in such currencies as the Loan is from time to time denominated.

III.1.1.6   A Redenomination or the operation of the provisions in the Loan Agreement relating to the Currency Option shall at no time result in the Borrower having the right to request **(1.)** an increase of the Loan amount to be disbursed in the currency originally specified in the Loan Agreement (*"Original*

*Currency"*) or **(2.)** a re-disbursement of any portion of the Loan already repaid.

### III.1.2   EQUALISATION OF EXCHANGE RATE FLUCTUATIONS ON DUE DATES OF REPAYMENT INSTALMENTS (105%-PROVISION)

III.1.2.1   If, on a due date of a repayment instalment (*"Repayment Date"*), the Loan amount outstanding (less the repayment instalment becoming due on such Repayment Date) after a conversion into the Original Currency in the manner set forth in Clause III.1.2.2 (*"Controlling Conversion"*) exceeds one hundred and five (105) percent of the amount which would be outstanding on such Repayment Date if the Loan had been disbursed and at all times remained disbursed and paid back in the Original Currency (*"Original Currency Amount"*), then KfW IPEX-Bank may demand the Borrower to make on such Repayment Date a prepayment of the Loan in an amount being sufficient to reduce the balance of the Loan to one hundred and five (105) percent of the Original Currency Amount (*"Compensation Amount"*). The Compensation Amount shall be calculated in the manner set forth in Clause III.1.2.2 and shall be payable in the Outstanding Currencies (as defined in Clause III.1.2.2).

III.1.2.2   The Controlling Conversion shall be effected on the basis of the spot rate of exchange for the purchase of the currencies in which the Loan is outstanding on the respective Repayment Date (*"Outstanding Currencies"*) with the Original Currency, as determined by KfW IPEX-Bank two (2) Banking Days (in Frankfurt am Main and the principal financial centre of the Original Currency and the Outstanding Currency) prior to such Repayment Date.

### III.2.   INTEREST

### III.2.1   GENERAL PROVISIONS REGARDING INTEREST

III.2.1.1   Interest on each amount disbursed (such amount, irrespective of whether being the entire Loan or any part thereof, hereinafter being referred to as a *"Loan Portion"*) shall accrue from the dates on which disbursements are debited to the dates on which the respective repayment instalments are credited to the account of KfW IPEX-Bank as specified in the Loan Agreement.

III.2.1.2   Interest shall be payable on the dates specified in the Loan Agreement.

III.2.1.3   KfW IPEX-Bank shall notify the Borrower without delay of the interest rates determined under the Loan Agreement and of the exact length of each Interest Period and each Fixed Interest Period.

### III.2.2   VARIABLE INTEREST RATE

If the Loan Agreement provides for a variable interest rate to be calculated by reference to successive interest periods not being longer than twelve (12) months (each an *"Interest Period"*), the following shall apply:

#### DURATION OF INTEREST PERIODS

III.2.2.1   The first Interest Period relating to a Loan Portion shall commence on the date of disbursement of that Loan Por-



Page 3 of the General Terms and Conditions for Ship Financing (February 2008)

tion. The subsequent Interest Periods shall start on the last day of the preceding Interest Periods, and the last Interest Period shall end on the due date of the last repayment instalment for the relevant Loan Portion. To the extent reasonably practicable, the last day of an Interest Period shall be the due date of a repayment instalment for the relevant Loan Portion. The exact length of each Interest Period will be determined by KfW IPEX-Bank in accordance with market practice.

III.2.2.2  If the Loan Agreement provides for a right of the Borrower to choose between different Interest Periods, the Borrower shall notify KfW IPEX-Bank of the Interest Period selected five (5) Banking Days (in Frankfurt am Main) prior to the disbursement of the relevant Loan Portion or, after disbursement of such Loan Portion, five (5) Banking Days (in Frankfurt am Main) prior to the expiry of the then current Interest Period. Failing such notification for the first Interest Period relating to a Loan Portion, such Interest Period shall be six (6) months, and failing such notification for other Interest Periods, such Interest Periods shall have the same length as the preceding ones.

*REGULAR DETERMINATION OF EURIBOR*

III.2.2.3  The EURIBOR for any Interest Period shall be the rate determined by KfW IPEX-Bank as being the percentage rate per annum quoted on **Reuters' page EURIBOR01** or, if this page does not have the required details or is not accessible, on **Bloomberg page EBF** (or on a successor page which replaces Reuters' page EURIBOR01 or Bloomberg page EBF) at or about 11.00 am Brussels time on the second Banking Day (in Frankfurt am Main) before the first day of that Interest Period as the EURIBOR rate of the European Banking Federation for euro term deposits in the European interbank market for the same period as that Interest Period or, if none of the periods quoted by Reuters or Bloomberg are the same as that Interest Period, the applicable EURIBOR will be determined by linear interpolation using the next shorter and next longer periods quoted by Reuters or, as the case may be, by Bloomberg.

*REGULAR DETERMINATION OF LIBOR*

III.2.2.4  The LIBOR for any Interest Period shall be the rate determined by KfW IPEX-Bank as being the percentage rate per annum quoted on **Reuters' page LIBOR01** or, if this page does not have the required details or is not accessible, on **Bloomberg page BBAM** (or on a successor page which replaces Reuters' page LIBOR01 or Bloomberg page BBAM) at or about 11.00 am London time on the second London Banking Day before the first day of such Interest Period, as the LIBOR rate of the British Banking Association as its Interest Settlement Rates for the currency for which LIBOR is to be determined under the Loan Agreement („*Relevant Currency*") and for a period equal to such Interest Period. If none of the periods quoted by Reuters or Bloomberg are the same as that Interest Period, the LIBOR rate will be determined by linear interpolation using the next shorter and next longer periods quoted by Reuters or, as the case may be, by Bloomberg.

*SUBSTITUTE METHOD OF DETERMINATION OF EURIBOR / LIBOR*

III.2.2.5  If the quotations referred to in Clause III.2.2.3 and/or III.2.2.4 are not available or the relevant Reuters' or Bloomberg's page does not so appear, the applicable EURIBOR and/or LIBOR shall be the annual interest rate to be applied to an Interest Period which is determined by KfW IPEX-Bank on the basis of the arithmetic mean of such annual interest rates quoted on the second Banking Day (in Frankfurt am Main and (for LIBOR) in London) prior to the first day of the relevant Interest Period by three major commercial banks active in the European interbank Market and selected by KfW IPEX-Bank for EUR loans and/or loans in the Relevant Currency in an amount comparable to the Loan Amount in question and for a time period which most closely corresponds to the relevant Interest Period.

**III.2.3**  *FIXED INTEREST RATE*

If the Loan Agreement provides for a right of the Borrower to select a fixed interest rate to be applied to a Loan Portion for periods of more than twelve (12) months (each a „*Fixed Interest Period*"), the following shall apply:

III.2.3.1  The Borrower may request that a fixed interest rate shall become applicable from the date of disbursement of the relevant Loan Portion or from the last day of the Interest Period or Fixed Interest Period relating to the relevant Loan Portion.

III.2.3.2  The Borrower shall make its request not later than five (5) Banking Days (in Frankfurt am Main and the principal financial centre of the currency in which such Loan Portion is denominated) prior to the date on which the fixed interest rate shall become applicable to such Loan Portion („*Effective Date*"). Unless otherwise determined by the Borrower not later than three (3) Banking Days (a specified above) prior to the Effective Date, the Borrower's selection shall become irrevocable.

III.2.3.3  The fixed interest rate applicable to a Loan Portion shall be determined by KfW IPEX-Bank two (2) Banking Days (as specified in Clause III.2.3.2) prior to the Effective Date.

III.2.3.4  The last day of a Fixed Interest Period relating to a Loan Portion shall be the due date of a repayment instalment for such Loan Portion.

III.2.3.5  After the end of a Fixed Interest Period the Loan Portion for which the interest rate has been fixed shall again bear a variable interest rate (Clause III.2.2), unless another fixed interest rate is determined in accordance with the provisions set forth above.

**III.3.**  **PREPAYMENTS**

**III.3.1**  *VOLUNTARY PREPAYMENT*

The Borrower may prepay Loan amounts only subject to ten (10) days' prior notice to KfW IPEX-Bank. Any such notice given by the Borrower shall be irrevocable, shall specify the date on which the prepayment is to be made and the amount thereof and shall oblige the Borrower to pay to KfW IPEX-Bank the amount therein stated.

52/59



Page 4 of the General Terms and Conditions for Ship Financing (February 2008)

### III.3.2 MANDATORY PREPAYMENT IN CASE OF A TOTAL LOSS

If the Loan Agreement provides for a mandatory prepayment in case of a Total Loss, the following shall apply:

III.3.2.1 „Total Loss" means **(1.)** the actual, constructive, agreed, compromised or arranged total loss of the Vessel or **(2.)** the requisition for title or other compulsory requisition including, if the Vessel is not released therefrom within thirty (30) days, capture, seizure, detention or confiscation (but excluding requisition for use or hire) by any governmental authority or by persons acting or purporting to act on behalf of any governmental authority or by pirates, hijackers, terrorists or similar persons.

III.3.2.2 A Total Loss shall be deemed to have occurred **(1.)** if it consists of an actual total loss, on the actual date of loss or, if that date is not known, on the date on which the Vessel was last heard of or **(2.)** if it consists of a constructive, agreed, compromised or arranged total loss, on the date on which notice of abandonment of the Vessel is given to her insurers for the time being or (if her insurers for the time being do not admit the claim for total loss) at the time on which a total loss claim is subsequently adjudged to have occurred by a competent court or arbitration tribunal or liability in respect thereof as a total loss is admitted or agreed by the insurers or **(3.)** if it consists of a requisitioning for title or other compulsory requisition, on the date on which the requisition is expressed to take effect by the person requisitioning the Vessel.

### III.3.3 PREPAYMENT COMPENSATION

III.3.3.1 If the Borrower prepays Loan amounts earlier than on the last day of an Interest Period (if such Loan amounts bear a variable interest rate) or Fixed Interest Period (if such Loan amounts bear a fixed interest rate) applicable to such Loan amounts on the prepayment date, then the Borrower shall pay to KfW IPEX-Bank a prepayment compensation in accordance with Clause III.3.3.2.

III.3.3.2 The prepayment compensation shall be equal to the net present value of the difference between **(1.)** the interest which would have been payable to KfW IPEX-Bank under the Loan Agreement by the end of the relevant Interest Period or Fixed Interest Period if the respective Loan amounts had not been prepaid and **(2.)** the interest which KfW IPEX-Bank can obtain by investing the Loan amounts prepaid for the remaining term of the relevant Interest Period or Fixed Interest Period. The prepayment compensation shall be calculated by KfW IPEX-Bank and notified to the Borrower.

### III.3.4 GENERAL PROVISIONS FOR PREPAYMENTS

III.3.4.1 Any prepayment under the Loan Agreement shall be set off against the outstanding repayment instalments of the Loan in the inverse chronological order of instalments.

III.3.4.2 Together with the respective prepayment the Borrower shall also pay **(1.)** any prepayment compensation becoming due by reason of such prepayment and **(2.)** all interest on the amount prepaid and accrued up to the date of such prepayment.

### III.4. PAYMENTS IN GENERAL

III.4.1 No payment to KfW IPEX-Bank under the Loan Agreement, be it pursuant to any award or judgement or order of any court or otherwise made, shall operate to discharge the obligation of the Borrower in respect of which it was made, unless and until payment in full shall have been received by KfW IPEX-Bank in the currency in which such obligation is stipulated to be payable under the Loan Agreement. To the extent that the amount of any payment made in a currency other than the currency stipulated to be payable under the Loan Agreement shall, upon conversion into the currency in which the payment was stipulated to be made pursuant to the Loan Agreement, fall short of the amount of the relevant obligation expressed in such stipulated currency, the Borrower shall remain indebted to KfW IPEX-Bank in such sum as shall equal the amount of the shortfall.

III.4.2 If any payment under the Loan Agreement is due on a day which is not a Banking Day (in Frankfurt am Main and the principal financial centre of the currency in which such payment is to be made), payment of the respective amount due has to be effected on the next succeeding Banking Day so specified in the same calendar month (if there is one) or the preceding Banking Day so specified (if there is not).

III.4.3 In case of any adjustment of the due date for payments under the Loan Agreement pursuant to Clause III.4.2, the following shall apply: **(1.)** the current Interest Period or Fixed Interest Period shall be adjusted accordingly; and **(2.)** the next Interest Period or Fixed Interest Period shall commence on the expiry of that adjusted Interest Period or Fixed Interest Period.

III.4.4 The Borrower shall not be entitled to exercise rights of retention, set-off or counterclaim against payment obligations under the Loan Agreement, unless such Borrower's right has been established with legally binding force or has not been contested by KfW IPEX-Bank.

### III.5. REPRESENTATIONS AND WARRANTIES

The Borrower represents and warrants to KfW IPEX-Bank that at the time of signing of the Loan Agreement:

III.5.1 it is a company duly incorporated and validly existing under the laws under which it is incorporated;

III.5.2 it has the power to enter into the Loan Agreement, the Security Documents and each of the contracts to which the Borrower is a party and which are relevant in connection with the Loan Agreement and/or the Security Documents („Operational Documents"), including but without limitation any operational contracts – such as any charter contract the earnings under which are or will be assigned to KfW IPEX-Bank for security purposes – and any ship purchase contract, ship management contract or ship building contract (the Loan Agreement, the Security Documents and the Operational Documents together being referred to as the „Relevant Documents");

III.5.3 it has taken all necessary actions required under its articles and/or memorandum of association, by-laws and the laws of the country under the laws of which the Borrower is



Page 5 of the General Terms and Conditions for Ship Financing (February 2008)

incorporated to authorise the borrowing and repayment of the Loan in the manner required by the Loan Agreement and the execution, delivery and performance of the Relevant Documents;

III.5.4 the execution, delivery and performance of the Relevant Documents will not violate, or exceed the powers granted to it by, any regulation of applicable law or its articles and/or memorandum of association and by-laws;

III.5.5 all necessary or other official approvals, consents, licences, registrations or authorisations in any relevant jurisdiction, to which the Borrower is subject and which are required to enable the Borrower lawfully to enter into and to perform its obligations under the Relevant Documents, have been obtained or made and are in full force and effect;

III.5.6 each of the Relevant Documents executed or to be executed by the Borrower constitutes or will constitute its legal, valid and binding obligations, which are enforceable against it in accordance with their respective terms;

III.5.7 no litigation or administration proceedings before any court, arbitration tribunal or governmental authority is pending or – to the best knowledge of the Borrower – threatened against the Borrower, the charterer of the Vessel specified in the Loan Agreement („*Charterer*") or any Liable Person (as defined below) or any of their property or assets, which might reasonably be expected to have a material adverse effect on the business or financial condition of the Borrower, the Charterer or such Liable Person or their ability to perform their respective obligations under the Relevant Documents;

„*Liable Person*" means any person or legal entity which **(1.)** is either wholly or in part personally liable (as shareholder or partner, joint owner of the Vessel, co-obligor or otherwise) for the Borrower's obligations under the Loan Agreement or **(2.)** has directly or indirectly wholly or in part guaranteed any payment obligations of the Borrower under the Loan Agreement;

III.5.8 no bankruptcy proceedings or insolvency proceedings are pending or – to the best knowledge of the Borrower – threatened against the Borrower, the Charterer or any Liable Person;

III.5.9 the Borrower will not be required to make any deduction or withholding on account of taxation or otherwise from any payment it must make to KfW IPEX-Bank under the Loan Agreement or any of the other Relevant Documents;

III.5.10 save for registration of the Mortgage, it is not necessary to ensure the legality, validity, enforceability or admissibility in evidence of the Loan Agreement, the Security Documents or any of the other Relevant Documents that it be filed, recorded or registered with any governmental authority or agency in the country under the laws of which the Borrower is incorporated or in any other applicable jurisdiction; and

III.5.11 the information provided to KfW IPEX-Bank by the Borrower or any person on its behalf in connection with the Relevant Documents is true, complete and accurate in all material respects, and the Borrower is not aware of any material facts or circumstances that have not been dis-

closed and which presumably would, if disclosed, adversely affect the decision of KfW IPEX-Bank to advance the Loan under the Loan Agreement.

III.6. UNDERTAKINGS REGARDING THE ECONOMIC SITUATION OF THE BORROWER

The Borrower undertakes with KfW IPEX-Bank:

III.6.1 to maintain the corporate existence of the Borrower as a registered company under the laws under which it is incorporated, and not to pass a resolution for the dissolution or winding up of the Borrower;

III.6.2 as soon as the same become available, but in any event within one hundred and eighty (180) days after the end of each financial year, to deliver to KfW IPEX-Bank the audited financial statements (including balance sheet, profit and loss account and explanatory notes) for such financial year in respect of the Borrower;

III.6.3 **(1.)** to deliver to KfW IPEX-Bank a budget in the form of a cash flow forecast showing the projected earnings and expenses of the Vessel (including reasonable amounts for repairs, maintenance, dry dockings and special survey) and (if requested so by KfW IPEX-Bank) of the Borrower's overall business for each calendar year, such budgets to be submitted until the end of March of each year, and **(2.)** to provide from time to time upon request of KfW IPEX-Bank a report (together with documentary proof) regarding the actual receipts and expenses which the Vessel had earned or incurred respectively for the immediately preceding half-year period;

III.6.4 promptly upon request of KfW IPEX-Bank to furnish KfW IPEX-Bank with additional information about the business, assets, operation, contractual commitments and financial condition of the Borrower, as KfW IPEX-Bank may from time to time reasonably request;

III.6.5 to allow KfW IPEX-Bank to inspect the books of the Borrower;

III.6.6 if requested by KfW IPEX-Bank, to use its best efforts to procure that the Charterer and any Liable Person (each as defined in Clause III.5.7) provides (in respect of itself) KfW IPEX-Bank with **(1.)** the documents or information set forth in Clause III.6.2 and **(2.)** additional information about its business, assets, operation, contractual commitments and financial condition as KfW IPEX-Bank may from time to time reasonably request; and

III.6.7 to promptly advise KfW IPEX-Bank following the Borrower becoming aware of **(1.)** any material event that could impede or endanger the due performance of any of the Borrower's obligations under the Loan Agreement, the Security Documents and/or any of the other Relevant Documents or **(2.)** the occurrence of any Event of Default or any event which with the giving of notice or lapse of time will constitute an Event of Default.

IV. MORTGAGE AS SECURITY

Unless otherwise provided in the Loan Agreement, the Outstanding Indebtedness shall be secured *inter alia* by the registration of a ship mortgage (the „*Mortgage*") with the agreed ranking. If the Vessel is registered in the Ger-

54/59



Page 6 of the General Terms and Conditions for Ship Financing (February 2008)

man Register for Ships the Mortgage shall secure all claims based on an abstract promise to pay issued as security for the Outstanding Indebtedness.

## V. OBLIGATIONS REGARDING THE VESSEL

### V.1. MAINTENANCE OF THE VESSEL

The Borrower shall:

V.1.1 maintain the Vessel at all times during the lifetime of the Loan in good seaworthy conditions, arrange to have any damages to the Vessel repaired without delay and (failing to do so) allow and assist a third party assigned by KfW IPEX-Bank to repair the damage at the expense of the Borrower;

V.1.2 not without the prior consent of KfW IPEX-Bank make modifications of the Vessel which cost more than ten (10) percent of the Minimum Insured Value (as defined in Clause VI.2.1);

V.1.3 permit KfW IPEX-Bank to inspect repairs to, and modifications of, the Vessel and provide KfW IPEX-Bank with evidence by way of receipts within two (2) weeks after being so requested that the costs thereof have been fully paid;

V.1.4 not without the prior consent of KfW IPEX-Bank remove from the Vessel accessories or other equipment which are covered by the Mortgage or any other security and are necessary for the operation of the Vessel or which are of material value, unless such equipment is replaced with equivalent parts which are not merely leased;

V.1.5 procure that the Vessel maintains its present class, and evidence the renewal or confirmation of the class to KfW IPEX-Bank within two (2) weeks after such renewal or confirmation; and

V.1.6 permit KfW IPEX-Bank to enter and inspect the Vessel and each of the Vessel's documents at any time and to have an expert opinion issued regarding the condition of the Vessel.

### V.2. OPERATION OF THE VESSEL

#### V.2.1 GENERAL REQUIREMENTS

The Borrower shall:

V.2.1.1 not without the prior consent of KfW IPEX-Bank change (or permit to be changed) the operation of the Vessel as envisaged in the Loan Agreement;

V.2.1.2 not carry contraband nor run blockades nor enter into waters for which the Vessel's insurance policies do not warrant full coverage; and

V.2.1.3 procure that the Vessel is always employed in conformity with the terms of the instruments of insurances and comply with such requirements as the insurers may prescribe.

#### V.2.2 CONTRACTS REGARDING THE OPERATION OF THE VESSEL

The Borrower shall:

V.2.2.1 not without the prior consent of KfW IPEX-Bank enter into (and thereafter amend and/or terminate) any agreement relating to the possession, operation, use, employment or chartering of the Vessel;

V.2.2.2 not without the prior consent of KfW IPEX-Bank terminate or make any material amendment or modification to any Operational Document (as defined in Clause III.5.2); and

V.2.2.3 have the Vessel managed by a manager of first class standing acceptable to KfW IPEX-Bank and not without the prior consent of KfW IPEX-Bank terminate or amend such management agreement or enter into (and thereafter amend and terminate) any other agreement regarding the technical or commercial management of the Vessel.

#### V.2.3 REGISTRATION IN THE SHIP REGISTER AND FLAG

The Borrower shall:

V.2.3.1 not without the prior consent of KfW IPEX-Bank change the registration of the Vessel from the ship register set forth in the Loan Agreement, except to such other register which has been approved by KfW IPEX-Bank in writing, and then only if KfW IPEX-Bank receives a mortgage on the Vessel as security in substitution for the Mortgage and a legal opinion satisfactory to KfW IPEX-Bank confirming the validity and comparable enforceability of such substitute mortgage;

V.2.3.2 not without the prior consent of KfW IPEX-Bank change the flag of the Vessel, except to such other flag which has been approved by KfW IPEX-Bank in writing, and then only if KfW IPEX-Bank receives a legal opinion satisfactory to it, confirming, inter alia, that the validity and enforceability of the Mortgage and any other security created by the Security Documents is not negatively affected thereby; and

V.2.3.3 if (1.) the Vessel flies the flag of a country other than the country of the ship register in which the Vessel is registered and (2.) in KfW IPEX-Bank's opinion the security created by the Mortgage or any other security created by the Security Documents is negatively affected by reason of the Vessel's flying such flag, forthwith at the expense of the Borrower transfer the Vessel to another flag acceptable to KfW IPEX-Bank (it being understood that KfW IPEX-Bank is herewith irrevocably appointed as the Borrower's attorney-in-fact to take all necessary steps in the Borrower's name and at the Borrower's expense).

#### V.2.4 DISPOSALS OF THE VESSEL

The Borrower shall:

V.2.4.1 not without the prior consent of KfW IPEX-Bank sell, transfer or otherwise dispose of the Vessel (or a share or interest therein) or to grant any person any option to purchase the Vessel (or a share or interest therein), unless the Loan is prepaid in full including prepayment compensation (as specified in Clauses III.3.3) and all other costs and charges concurrently with the completion of such sale; and

V.2.4.2 not without the prior consent of KfW IPEX-Bank create or permit to subsist any mortgage, charge or any other encumbrance of whatever nature over the Vessel and/or its

55/59



Page 7 of the General Terms and Conditions for Ship Financing (February 2008)

earnings (other than the Mortgage and any security created by the Security Documents).

**V.2.5  VESSEL TO BE KEPT FREE FROM RIGHTS OF THIRD PARTIES**

The Borrower shall:

V.2.5.1  pay and discharge all debts and liabilities whatsoever, which have given or may give rise to maritime, statutory or possessory liens on, or claims enforceable against, the Vessel;

V.2.5.2  in the event of the Vessel being **(1.)** arrested or **(2.)** detained or **(3.)** otherwise taken from the possession of the Borrower in exercise or purported exercise of any lien or claim as set forth in Clause V.2.5.1 or by any other reason whatsoever or **(4.)** encumbered with a forced mortgage, procure the release of the Vessel forthwith upon receiving notice thereof – but not later than within fourteen (14) days after the occurrence of the relevant event – including, without limitation, by providing or procuring the providing of security or otherwise as the circumstances may require; and

V.2.5.3  if relevant, invoke against the Vessel's creditors the defence that their claims are time-barred (it being understood that KfW IPEX-Bank is herewith irrevocably appointed as the Borrower's attorney-in-fact to assert such defence in the Borrower's name and at the Borrower's expense).

**V.2.6  COMPLIANCE WITH LEGAL REQUIREMENTS**

The Borrower shall comply with, and shall use its best efforts to procure that any manager or charterer of the Vessel complies with, all laws, regulations and requirements in relation to the Vessel, which shall include, without limitation, the International Management Code for the Safe Operation of Ships and for Pollution Prevention ("ISM-Code") and the International Ship and Port Facility Security Code ("ISPS-Code").

V.2.7  Obligation to Submit Documents

The Borrower shall promptly upon request of KfW IPEX-Bank submit to KfW IPEX-Bank certified copies or, if appropriate, originals of documents relating to the Vessel, its class, its operation, management and employment, its registration in the relevant ship register, its flag and its travel permits of whatsoever nature, as KfW IPEX-Bank may from time to time reasonably request.

**V.3.  OBLIGATION TO INFORM KfW IPEX-BANK**

The Borrower shall inform KfW IPEX-Bank immediately in the event that:

V.3.1  the Borrower's overall shipping operations be significantly limited, the operations with the Vessel be discontinued or the Vessel be laid up for more than one (1) month or any changes of the Borrower's management occur;

V.3.2  the Vessel is or is going to be deleted from its current ship register or loses the right to fly its current flag;

V.3.3  a forced sale of the Vessel be ordered, the Vessel be arrested or the Borrower loses the power of disposition over the Vessel in whole or in part in any other way;

V.3.4  the Vessel be involved in maritime court or other court proceedings or be encumbered with a forced mortgage;

V.3.5  the Vessel be salvaged from distress at sea or avails itself of third-party assistance;

V.3.6  maritime liens, a right of retention or claims due from ship mortgages be asserted against the Vessel;

V.3.7  the Vessel sustains damage or average exceeding five (5) percent of the Minimum Insured Value (as defined in Clause Vi.1.2), becomes a Total Loss (as defined in Clause III.3.2.1), be abandoned or becomes unworthy of repair;

V.3.8  the Vessel loses its class or the loss of its class is threatening; and/or

V.3.9  the Vessel loses any travel permit of whatsoever nature or the loss of such travel permit is threatening.

**V.4.  ANNUAL VALUATION OF THE VESSEL**

V.4.1  Commencing on the first anniversary of the first disbursement made under the Loan Agreement and, thereafter, in intervals no more frequently than annually, KfW IPEX-Bank may request a valuation of the Vessel at the expense of the Borrower.

V.4.2  KfW IPEX-Bank shall appoint an independent reputable shipbroker as valuer.

V.4.3  The Vessel shall be valued charter-free in US Dollar (without physical inspection, unless required by KfW IPEX-Bank) on the basis of a sale for prompt delivery for cash on arms' length or normal commercial terms as between a willing seller and a willing buyer without taking into account any charterparty or other engagement concerning the Vessel. The Borrower shall supply KfW IPEX-Bank and the shipbroker with such information concerning the Vessel and her condition as the shipbroker may require for the purpose of making any such valuation.

**V.5.  VESSEL TO BE MOVED UPON EVENT OF DEFAULT**

KfW IPEX-Bank may, as soon as an Event of Default occurs, demand that the Borrower move the Vessel to a harbour acceptable to KfW IPEX-Bank or, should the Borrower not comply with KfW IPEX-Bank's request without delay, have the Vessel moved to such harbour. For such purpose, KfW IPEX-Bank shall be entitled, as is herewith irrevocably authorised by the Borrower, to **(1.)** give binding orders to the captain and the crew of the Vessel in the name of the Borrower, **(2.)** take all other steps necessary or appropriate in the name and for the account of the Borrower and **(3.)** issue and accept all necessary statements to and from official authorities and other parties on behalf of the Borrower.

**V.6.  OBLIGATIONS REGARDING ENVIRONMENTAL MATTERS**

The Borrower shall:

V.6.1  in the ordinary course of business, regularly conduct reviews of the effect of applicable Environmental Laws on its business, operations and properties;



Page 8 of the General Terms and Conditions for Ship Financing (February 2008)

V.6.2 comply with the provisions of all applicable Environmental Laws;

V.6.3 obtain all relevant Environmental Approvals and be in compliance with all such Environmental Approvals;

V.6.4 promptly inform KfW IPEX-Bank as soon as it becomes aware that any Environmental Claim is pending or threatened against the Borrower or the Vessel, and

V.6.5 promptly inform KfW IPEX-Bank if there has occurred any Environmental Incident;

V.6.6 keep KfW IPEX-Bank advised in writing on such regular basis and in such details as KfW IPEX-Bank shall require, of its response to (1.) any Environmental Claim made in connection with the Vessel and (2.) any Environmental Incident;

V.6.7 indemnify KfW IPEX-Bank against any loss and/or costs and/or taxes of whatsoever nature it might incur deriving from an Environmental Claim or an Environmental Incident;

whereby

„Environmental Approval" means any consent, authorisation, licence or approval of any governmental authority required under any Environmental Laws with respect to the Vessel and/or the carriage of cargo and/or passengers thereon and/or the provision of goods and/or services on or from the Vessel;

„Environmental Claim" means (1.) any and all enforcement, clean-up, removal or other governmental or regulatory actions or orders instituted or completed pursuant to any Environmental Law or any Environmental Approval and (2.) any claim made by any third party relating to damage, contribution, loss or injury resulting from any actual or threatened emission, spill, release or discharge of Material of Environmental Concern from the Vessel;

„Environmental Incident" means (1.) any release or potential release of Material of Environmental Concern from the Vessel and (2.) any incident in which Material of Environmental Concern is released or threatened to be released from a vessel other than the Vessel and in connection with which the Vessel is actually or potentially liable to be arrested and/or the Vessel and/or the Borrower and/or any operator or manager is at fault or allegedly at fault or otherwise liable to any legal or administrative action;

„Environmental Laws" means all national, international and state laws, rules, regulations, treaties and conventions applicable to the Vessel and pertaining to the pollution of the environment or the protection of human health or the environment (including, without limitation, the carriage of Material of Environmental Concern and actual or threatened emissions, spills, releases or discharges of Material of Environmental Concern); and

„Material of Environmental Concern" means and includes oil, oil products and any other substance (including any gas) which is (or is capable of being or becoming) polluting, toxic or hazardous.

## VI. INSURANCES

### VI.1. GENERAL REQUIREMENTS WITH RESPECT TO INSURANCES

VI.1.1. The Borrower shall always insure the Vessel and keep her insured at the Borrower's expense in international insurance markets acceptable to KfW IPEX-Bank until repayment of the Outstanding Indebtedness in full in the name and for the account and interest of the Borrower and/or any other party having an interest in the Vessel as requested by KfW IPEX-Bank.

VI.1.2 The insurances shall be effected with insurance companies, underwriters, war risks associations and protection and indemnity associations and (as the case may be) through brokers of first class standing as shall from time to time be approved by KfW IPEX-Bank.

### VI.2. RISKS TO BE COVERED BY THE INSURANCES

The Borrower shall insure the Vessel against each and every risk which is customarily insured against by a prudent and respectable shipowner or ship operator of the same Vessel or similar vessels engaged in similar trades. The insurance cover shall include, without limitation, the following insurances respectively risks customarily insured under such insurances:

VI.2.1 insurance against fire, marine and other usual hull and machinery risks (including excess risks exceeding the insured value of the Vessel), in an amount of not less than the greater of (1.) the full commercial value of the Vessel and (2.) a sum which is equal to hundred and twenty (120) percent of the Outstanding Indebtedness („Minimum Insured Value");

VI.2.2 insurance against war risks (including risk of mines, blocking and trapping, missing vessel and confiscation risks) according to Institute War and Strike Clauses (Hulls) or the equivalent (always latest version), including excess risks exceeding the insured value of the Vessel and all risks excluded by clause 24 of the Institute Time Clauses (Hulls) 1983 or the equivalent (always latest version), in an amount not less than the Minimum Insured Value;

VI.2.3 notwithstanding Clause VI.2.2, additional war risk cover upon the Vessel entering areas which are an excluded area according to the International War Risk Trading Warranties;

VI.2.4 P&I Insurance by entering the Vessel and keeping her entered for its full tonnage in a first-class protection and indemnity association, belonging to the International Group of P&I Clubs („Group"), against all protection and indemnity risks which are usually insured against by entry in a protection and indemnity association (including, but not limited to, oil pollution risks, passenger liabilities and any sums payable to other persons in case of collision which are not covered by the ordinary hull and machinery policies), at the highest possible level of the Group, and in respect of pollution at the highest possible insurance level available from time to time;

VI.2.5 if requested by KfW IPEX-Bank, loss of hire insurance with a deductible for a period of not more than fourteen (14)



Page 9 of the General Terms and Conditions for Ship Financing (February 2008)

VI.2.6 Mortgagee's Interest Additional Perils (Pollution) Insurance in the name of KfW IPEX-Bank (which KfW IPEX-Bank will obtain in its own name but for the account of the Borrower, who shall reimburse KfW IPEX-Bank on demand) for an amount which is equal to one hundred and ten (110) per-cent of the Outstanding Indebtedness;

VI.2.7 Mortgagee's Interest Insurance against marine and war risks and protection and indemnity risks in the name of KfW IPEX-Bank (which KfW IPEX-Bank will obtain in its own name but for the account of the Borrower, who shall reimburse KfW IPEX-Bank for an amount which is equal to one hundred and ten (110) percent of the Outstanding Indebtedness; provided that no such Mort-gagee's Interest Insurance policy shall be effected against war and marine risks if the *Hypothekenklausel* (together with *Zusatzklausel zur Hypothekenklausel*, as the case may be) or the German Direct Mortgage clause LSW 1189 or insurance containing a clause substantially comparable to such clause is effected and included in the insurance policies.

**VI.3.   KfW IPEX-Bank's Right to Give Instructions and to Conclude Insurance Agreements**

VI.3.1. Notwithstanding the foregoing, the Borrower shall comply with all instructions given by KfW IPEX-Bank in relation to the insurances to be effected with respect to the Vessel.

VI.3.2 If the Borrower fails to comply with its obligations set out in Clause VI.1, VI.2 or VI.3.1, then KfW IPEX-Bank shall be entitled to insure in its discretion the Vessel respectively KfW IPEX-Bank's exposure as mortgagee against all risks for the account of the Borrower, who shall reimburse KfW IPEX-Bank upon first demand. In addition, KfW IPEX-Bank shall be entitled to cover all risks which are excluded in an insurance agreement by effecting additional insurances for the account of the Borrower, who shall reimburse KfW IPEX-Bank upon first demand.

**VI.4.   Insurance Premiums and Prolongation of Insurances**

VI.4.1 The Borrower shall pay all insurance premiums, calls, con-tributions or other sums payable in respect of the insur-ances in time, shall hand over KfW IPEX-Bank on request all receipts, shall prolong or renew all insurances in time and shall submit, without an additional request of KfW IPEX-Bank being required, evidence thereof to KfW IPEX-Bank at the latest immediately prior to the expiration of the current insurances.

VI.4.2 If the Borrower fails to comply with its obligations as set out in Clause VI.4.1, KfW IPEX-Bank shall be entitled (but not obligated) to pay the respective sums on behalf of the Borrower. The Borrower shall immediately reimburse KfW IPEX-Bank on demand.

**VI.5.   Fleet Cover**

If any of the insurances referred to in Clause VI.2 form part of a fleet cover, the Borrower shall procure that the insur-ers and (as the case may be) the insurance broker(s) un-dertake to KfW IPEX-Bank **(1.)** not to set off against any claims in respect of the Vessel any premia due in respect of any other vessels under such fleet cover or any premia due for other insurances relating to the insured fleet, **(2.)** not to cancel the insurances for the Vessel for reason of non-payment of premia for any other vessels under such fleet cover or premia for any other insurances relating to the insured fleet, and **(3.)** to issue a separate policy in re-spect of the Vessel if and when so requested by KfW IPEX-Bank.

**VI.6.   Annual Review of the Insurances**

VI.6.1 If KfW IPEX-Bank so requests the Borrower in writing, the Borrower shall procure throughout the term of the Loan, in intervals no more frequently than annually, a report from an independent broker or consultant acceptable to KfW IPEX-Bank as to the adequacy of the insurances then in force in respect of the Vessel.

VI.6.2 If the Borrower fails to comply with its obligation under Clause VI.6.1, then KfW IPEX-Bank shall be entitled to commission such broker or consultant for the account of the Borrower, who shall reimburse KfW IPEX-Bank upon first demand.

**VII.   General Legal Provisions**

VII.1 The Borrower shall not assign or pledge any rights or transfer any obligations arising from the Loan Agreement without the prior consent of KfW IPEX-Bank.

VII.2 No failure to exercise and no delay in exercising on the part of KfW IPEX-Bank any right under the Loan Agree-ment and/or any of the Security Documents shall operate as a waiver thereof nor shall any single or partial exercise of any right preclude any other or further exercise thereof in future.

VII.3 To the extent that the Borrower may now or in future in any jurisdiction claim for itself or its assets immunity from suit, execution, attachment or other legal process and to the ex-tent that in any such jurisdiction there may be attributed to itself or its assets such immunity, the Borrower irrevocably agrees not to claim and hereby irrevocably waives such immunity to the fullest extent permitted by the laws of such jurisdiction.

**VIII.   VAT Information**

All services provided by KfW IPEX-Bank under the Loan Agreement, and any other document stating that these General Terms shall apply, are VAT (*Umsatzsteuer*) ex-empt financial services. KfW IPEX-Bank's VAT identifica-tion number *(Umsatzsteuer-Identifikationsnummer)* is DE254097700.



58/59

KfW IPEX-Bank GmbH • POB 11 11 41 • 60046 Frankfurt am Main, Germany

**- via courier-**
Explorer Maritime Cruises LLC
132 East 70th Street
New York, NY – 10021
USA

| | |
|---|---|
| | Anne Marelke Hildebrand |
| Our ref.: | AMH |
| Phone: | +49 69 7431–8861 |
| Fax: | +49 69 7431–2944 |
| E-mail: | annemarelke.hildebrand@kfw.de |
| Date: | 04-25-2012 |

**Loan Agreement dated November 7, 2003 reinstated January 19, 2012**

Dear Sirs,

We refer to the above mentioned Loan Agreement between Explorer Maritime Cruises LLC and KfW.

We hereby confirm that we have agreed to extend the availability period under clause 4.3 until May 4, 2012.

Furthermore, we hereby confirm that we have agreed to delete clause 12.1(a) (Debt to equity ratio), and to delete the first sentence of paragraph 2 of Annex 5.

Please note that except as expressly provided herein, all other clauses of the above mentioned Loan Agreement remain unchanged and in full force and effect.

Best regards,

KfW IPEX Bank GmbH

Claudia Schlipsing
Director

Claudia Wenzel
Assistant Vice President

80037545v1



KfW IPEX-Bank GmbH • Palmengartenstrasse 5–9 • 60325 Frankfurt, Germany • Tel: +49 69 7431–0 • Fax: +49 69 7431–2944
www.kfw-ipex-bank.de • Registered Office: Frankfurt am Main • Commercial Register Frankfurt am Main, HRB 79744
Management Board: Christiane Laibach, Christian K. Murach, Markus Scheer, Harald D. Zenke (Speaker)
Head of Supervisory Board: Dr Norbert Kloppenburg



59/59

KfW IPEX-Bank GmbH • POB 11 11 41 • 60046 Frankfurt am Main, Germany

**Fax 001 212 774 1545**
Explorer Maritime Cruises LLC
132 East 70th Street
New York, NY – 10021
USA

| | |
|---|---|
| Claudia Wenzel | |
| Our ref.: | WzC |
| Phone: | +49 69 7431–2625 |
| Fax: | +49 69 7431–3768 |
| E-mail: | Claudia.wenzel@kfw.de |
| Date: | 05-03-2012 |

**Loan Agreement dated November 7, 2003 reinstated January 19, 2012**

Dear Sirs,

We refer to the above mentioned Loan Agreement between Explorer Maritime Cruises LLC and KfW.

We hereby confirm that we have agreed to extend the availability period under clause 4.3 until May 16, 2012.

Please note that except as expressly provided herein, all other clauses of the above mentioned Loan Agreement remain unchanged and in full force and effect.

Best regards,

KfW IPEX Bank GmbH

Claudia Schlipsing
Director

Claudia Wenzel
Assistant Vice President

80037545v1

KfW IPEX-BANK
A KfW BANKENGRUPPE COMPANY

KfW IPEX-Bank GmbH • Palmengartenstrasse 5–9 • 60325 Frankfurt, Germany • Tel: +49 69 7431-0 • Fax: +49 69 7431-2944
www.kfw-ipex-bank.de • Registered Office: Frankfurt am Main • Commercial Register Frankfurt am Main, HRB 79744
Management Board: Christiane Laibach, Christian K. Murach, Markus Scheer, Harald D. Zenke (Speaker)
Head of Supervisory Board: Dr Norbert Kloppenburg