UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

Jacksonville Division

"IN ADMIRALTY"

Case Number:  3:14-cv-715-BJD-JRK

KfW, a German financial institution,

    Plaintiff,

v.

M/V YORKTOWN, Official No. 928931,
a 1988 218.8 ft. cruise ship, her engines, tackle,
rigging, dinghies, equipment, and other
appurtenances to the Vessel, *in rem,* and Explorer
Maritime Cruises, LLC, a Delaware Limited
Liability Company

    Defendants.
_____/

## UNOPPOSED MOTION FOR INTERLOCUTORY SALE OF M/V YORKTOWN

Plaintiff, KfW, by and through undersigned counsel and pursuant to Rule E(9) of the Supplemental Rules for Admiralty or Maritime Claims of the Federal Rules of Civil Procedure, hereby moves for the interlocutory sale of the M/V YORKTOWN, Official Number 928931 (the "Vessel"), and, in support thereof, states as follows:

### BACKGROUND FACTS

1. The Vessel is an 83.82 meter cruise ship that is more than twenty-five (25) years old.

2. The Vessel ceased its cruising operations in early March 2014, when the owner and/or operator no longer had the necessary funds to continue the Vessel's cruising business.

3. As such, the Vessel has been moored at its current location at Reynolds Park Yacht Center in Green Cove Springs, Florida since March 28, 2014.

4. In the months following the cessation of the Vessel's operation, Plaintiff engaged in discussions with EMC through Mr. Vasos Papagapitos, one of EMC's managing members, regarding the possibility of a non-judicial sale of the Vessel to help satisfy the outstanding balance of the Mortgage.

5. In this spirit, Plaintiff refrained from foreclosing on the Mortgage for several months to give Mr. Papagapitos time to market the Vessel and find a buyer to purchase it.

6. In May 2014, U.S. Shipbrokers performed a Market Evaluation Survey on the Vessel to appraise the Vessel's fair market value and the general condition of the Vessel.  *See* **Exhibit 1** – *Market Evaluation Survey Report* (the "Survey Report").

7. The Survey Report listed the Vessel's current fair market value at approximately $1,500,000.00.  See Exhibit 1.

8. U.S. Shipbrokers further warned in their Survey Report, "the M/V Yorktown is seeing quick deterioration of her appearance" and "the vessel should be quickly marketed." *See* Exhibit 1.

9. Importantly, the Vessel has not been hooked up to shore power since it commenced mooring at Reynolds Park Yacht Center, potentially compromising the Vessel's bilge, air conditioning, and other systems.

10. With EMC having been unable to secure a buyer for the Vessel by mid-June 2014, Plaintiff heeded U.S. Shipbrokers' advice and filed the present action against the Vessel on June 20, 2014 in order to move forward with obtaining a

judicial sale of the Vessel so as to minimize further deterioration of the Vessel while it remained moored at Reynolds Park Yacht Center.

11. So long as the Vessel remains in the custody of the Substitute Custodian, it will continue incurring dockage fees of approximately $125.00 per day as well as additional custodial fees of at least $342.33 per day – totaling close to $500 per day in fees.

12. Additionally, hurricane has season has begun in Florida, leaving the Vessel at additional risk of damage and/or deterioration from severe weather for the next several months, particularly since the Vessel does not have shore power while at its present mooring.

13. In an effort to preserve the condition of the Vessel and stem the accrual of custodial fees, Plaintiff respectfully requests that this Court allow the Vessel to be sold through an interlocutory sale.

14. Plaintiff has notified EMC of its intent to seek an interlocutory sale of the Vessel, and EMC does not object to an interlocutory sale.  *See* **Exhibit 2** – *Email Correspondence with EMC*.

### PLAINTIFF IS ENTITLED TO AN ORDER DIRECTING THE INTERLOCUTORY SALE OF THE M/V YORKTOWN

The guidelines for determining when the interlocutory sale of arrested property is appropriate are stated in Rule E(9) of the Federal Supplemental Rules for Certain Admiralty and Maritime Claims.  Rule E(9)(a) provides:

(9) Disposition of Property; Sales.

> (a) *Interlocutory Sales; Delivery.*
>
> (i) On application of a party, the marshal, or other person having custody of the property, the court may order all or part of the

> property sold—with the sales proceeds, or as much of them as will satisfy the judgment, paid into court to await further orders of the court—if:
>
>> (A) the attached or arrested property is perishable, or liable to deterioration, decay, or injury by being detained in custody pending the action;
>>
>> (B) the expense of keeping the property is excessive or disproportionate; or
>>
>> (C) there is an unreasonable delay in securing release of the property.

"Plaintiff need only demonstrate that one of these conditions is present to justify an interlocutory sale of the vessel." *20th Century Fox Film Corp. v. M.V. Ship Agencies*, 992 F. Supp. 1434, 1437-1438 (M.D. Fla. 1997) citing *Silver Star Enterprises, Inc. v. M/V Saramacca*, 19 F.3d 1008, 1014 (5th Cir. 1994). However, in this case all conditions exist, making judicial sale necessary and appropriate.

### 1. The Vessel Is Liable to Deterioration and Decay

"[T]he interlocutory sale of a vessel is not a deprivation of property but rather a necessary substitution of the proceeds of the sale," *Pee Dee State Bank v. F/V Wild Turkey*, Civ. No. 2:91-809-18, 1991 U.S. Dist. LEXIS 20288, 1991 WL 355221, at *5 (D. S.C. 1991), undertaken, in part, to "avoid[] the recognized complications associated with maintaining a vessel under arrest." *Freret Marine Supply v. M/V Enchanted Capri*, No. 00-3805, 2001 U.S. Dist. LEXIS 8161, 2001 WL 649764, at *1 (E.D. La. June 11, 2001). Accordingly, the property need only be "*liable to* deterioration" for an interlocutory sale to be ordered. *See* Rule E(9); *Branch Banking & Trust Co. v. Fishing Vessel Toplesss*, 2012 U.S. Dist. LEXIS 170296, 8-9, 2012 WL 6019288 (D. Md. 2012).

In the present matter, the Vessel has already been laid up for several months without shore power.  A recent survey of the Vessel indicated that the Vessel's condition was deteriorating while the Vessel was moored and out of operation.  Additionally, the Vessel is at an increased risk for damage and deterioration from severe weather now that hurricane season has fallen upon Green Cove Springs, Florida where the Vessel is moored.  As such, the Vessel is clearly liable to deterioration and decay the longer remains under the control of the Court.  The preservation of the value of the Vessel is important to all parties and can be achieved through an expedient judicial sale.  Thus, an interlocutory sale, which will convert a depreciating, deteriorating asset (the Vessel) into cash and secure recovery at the Vessel's current value, will benefit all of the parties.  *See Merchants National Bank of Mobile v. Dredge Gen. G.L. Gillespie*, 488 F. Supp. 1302, 1309 (W.D.La. 1980), aff'd, 663 F.2d 1338 (5th Cir.). cert denied, 102 S.Ct. 2263 (1981).

### 2. The Expense of Keeping the M/Y YORKTOWN Is Expensive and Disproportionate

The fair market value of the Vessel in its current condition, as of May 2014, has been estimated to be around $1,500,000.00.  In contrast, the custodial fees for keeping the Vessel are close to $500.00 per day.  These custodial fees are disproportionate to the value of the Vessel.  *See Vineyard Bank*, 2009 U.S. Dist. LEXIS 23844, 2009 WL 799304, at *2 (finding that a total of $7,473.82 of *custodia legis* expenses since the vessel's arrest was an excessive cost); *Merchants Nat. Bank of Mobile*, 663 F.2d at 1340-43 (holding that $17,000 total in maintenance and insurance fees per month for eight defendant vessels was excessive when defendant did not attempt to secure the vessels for eight months); *Caterpillar Fin. Services Corp. v. Coleman*, 99-03821 CM RZX, 1999 U.S. Dist. LEXIS 22387, 1999 WL 33218595, at *2 (C.D. Cal. Aug. 19, 1999) (finding

that the "expense of keeping the [Defendant Vessel] in custody, specifically $1,400.00 per month, ... appears to be excessive").

Expenses to maintain and protect the vessel while in the custody of the Court are to be repaid out of the proceeds of the sale of the Vessel in priority to all lien claims, thus diminishing the funds remaining from the sale to pay the Plaintiff and/or any potential intervening plaintiffs and/or the Vessel's owner.  The amount to be repaid to the substitute custodian out of the proceeds of the sale of the Vessel is increasing daily, thereby substantially lessening the value of the arrested property as each day goes by. Since the custodial costs are mounting at a rate of around $500.00 per day and can be avoided by an interlocutory sale, an interlocutory sale should be ordered in accordance with Rule E(9)(a).

Additionally, the expense of keeping the vessel in custody detracts from its value which has a direct relationship to Plaintiff's right of action against the Vessel.  A prompt sale is especially important here, where the value of the Vessel is far less than the amount of Plaintiff's claim and therefore the Substitute Custodian's fees directly impact Plaintiff's recovery. Because the asset is deteriorating and the value of the security is being rapidly reduced by the need to pay substitute custodian fees, it is in all parties' interest to hold a prompt interlocutory sale to convert the Vessel into a non-deteriorating cash fund.

## **CONCLUSION**

In the present matter, Plaintiff seeks to maximize the return on the sale of the Vessel by having the Vessel sold as soon as possible in order to prevent further deterioration of its condition and the further accumulation of custodial fees.  The

proceeds from an interlocutory sale of the Vessel, when deposited in the registry of this Court, would serve as an acceptable and desirable substitute for the Vessel itself, and would, in addition, accomplish the purpose of eliminating mounting costs and the possibility of damage to the Vessel while it remains under arrest.  Thus, the interlocutory sale would benefit all parties to this action.  Importantly, EMC, the Vessel's owner, supports Plaintiff's request for an interlocutory sale.

WHEREFORE, Plaintiff prays that this Court enter its order providing:

(a)    for the sale of the Vessel, her engines, tackle, rigging, dinghies, equipment, appurtenances, furniture, etc., by the United States Marshal, Southern District of Florida at public auction to the highest bidder free and clear of all liens from any preexisting claims of the Vessel, whether recorded or otherwise, as provided in Supplemental Rule E(9)(a) of the Federal Rules of Civil Procedure;

(b)  that notice of such sale be made by advertisement pursuant to the Rule of the Court, and that the reasonable cost of such advertisement shall constitute a taxable cost in this action;

(c)    that the proceeds of such sale, upon confirmation by the Court, be paid by the United States Marshal into the registry of this Court to await and abide further order of this Court; and

(d)    for other and further relief as this Court shall deem reasonable, just and proper under the circumstances.

DATED:  June 26, 2014

Respectfully Submitted,

**Moore & Company, P.A.**
Attorneys for Plaintiff
355 Alhambra Circle, Suite 1100
Coral Gables, FL 33134
(786) 221-0600 Telephone
(786) 221-0601 Fax
Email: bbrogan@moore-and-co.com

**/s/ Blair Brogan**

---

Michael T. Moore, Esq.
Fla. Bar No. 207845
Blair Brogan, Esq.
Fla. Bar. No. 95029
Clay M. Naughton
Fla. Bar No. 29302

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 26, 2014, I served the foregoing document on all counsel of record via electronic mail issued through CM/ECF.

**s/ Blair Brogan**

---

Blair Brogan